## THE DELAWARE.

1. A "clean" bill of lading, that is to say a bill of lading which is silent as to the place of stowage, imports a contract that the goods are to be stowed *under* deck.
2. This being so, parol evidence of an agreement that they were to be stowed *on* deck is inadmissible.

APPEAL from the Circuit Court for the District of California; the case being thus:

The Oregon Iron Company, on the 8th of May, 1868, shipped on board the bark Delaware, then at Portland, Oregon, 76 tons of pig-iron, to be carried to San Francisco, at a freight of $4.50 a ton. The bill of lading was in these words:

"Shipped, in good order and condition, by Oregon Iron Company, on board the good bark *Delaware*, Shillaber, master, now lying in the port of Portland, and bound to San Francisco, to say seventy-five tons pig iron, more or less (contents, quality, and weight unknown), being marked as in the margin, and are to be delivered in like good order and condition at the aforesaid port of San Francisco, at ship's tackles (the dangers of the seas, fire, and collision excepted) unto ——, or assigns, he or they paying freight for the said goods in United States gold coin (before delivery, if required), as per margin, with 5 per cent. primage and average accustomed.

"In witness whereof the master or agent of said vessel hath affirmed to three bills of lading, all of this tenor and date; one of which being accomplished, the others to stand void. Vessel not accountable for breakage, leakage, or rust.

"C. E. SHILLABER,
"For the captain.

"PORTLAND, May 8th, 1868."

The iron was not delivered at San Francisco; and on a libel filed by the Iron Company, the defence set up was that by a verbal agreement made between the Iron Company and the master of the ship before the shipment or the signing of the bill of lading, the iron was stowed on deck, and that the

whole of it, with the exception of 6 tons and 90 lbs., had been jettisoned in a storm.

On the trial, the owners of the vessel offered proof of this parol agreement. The libellants objected, and the court excluded the evidence on the ground that parol proof was inadmissible to vary the bill of lading; and decreed in favor of the libellants for the iron that was thrown overboard. On appeal the case was disposed of in the same way in the Circuit Court. It was now here; the question being, as in the two courts below, whether in a suit upon a bill of lading like the one here, for non-delivery of goods stowed on deck, and jettisoned at sea, it is competent, in the absence of a custom to stow such goods on deck, to prove by parol a verbal agreement for such a stowage.

The District Court, in its opinion, among other things, said as follows:

"It is not disputed that the ordinary bill of lading *imports that the goods are to be safely stowed under deck.* It must also be admitted that, if they are stowed on deck with the consent of the shipper, or in accordance with a well-established and generally recognized usage, either of the particular trade or in respect of a particular kind of goods, the ship will not be liable. The point presented is, whether the consent of the shipper can be proved by parol.

"The case of *Creery* v. *Holly*,\* is directly in point. In that case Mr. Justice Nelson says:

" ' It is true that in this case nothing is said in the bill of lading as to the manner of stowing the goods, whether on deck or under deck; but the case concedes that the legal import of the contract, as well as the understanding and usage of merchants, impose upon the master the duty of putting them under deck, unless otherwise stipulated; and if such is the judgment of the law upon the face of the instrument, parol evidence is as inadmissible to alter it as if the duty was stated in express terms. It was part of the contract. It seems to me it would be extremely dangerous, and subject to the full force of every objection that excludes the admission of this species of evidence, to permit any stipulation, express or implied, in these instruments, to be thus varied. . . . If the implied obligation of the master in this case,

_____
\* 14 Wendell, 26.

arising out of the conceded construction of the bill of lading, may be varied by parol evidence, I do not see how any other stipulation included in it could be sustained upon an offer to impeach it in the same way.' "

"In *Niles* v. *Culver*,* the same principle was applied to a memorandum, which imported a contract.

"In *White* v. *Van Kirk*,† parol proof offered by a shipper of goods to show that the master agreed to take a particular route was held to be inadmissible.

"In *The Waldo*,‡ the language of Mr. Justice Ware is nearly identical with that of Mr. Justice Nelson, above quoted :

" 'It is true that the bill of lading does not say in express terms that the goods shall be stowed under deck, but *this is a condition tacitly annexed to the contract by operation of law;* and it is equally binding on the master, and the shipper is equally entitled to its benefit, although it was stated in express terms.  The parol evidence, then, is offered to control the legal operation of the bill of lading, and it is as inadmissible as though it were to contradict its words.' "

"In *Garrison* v. *The Memphis Insurance Company*,§ it was held that, where the bill of lading mentioned that the carrier was not to be responsible for injuries caused by the 'perils of the river,' parol evidence was inadmissible to show that by usage 'fire' was included among those perils.

\*        \*        \*        \*        \*.        \*        \*        \*        \*

"Where a promissory note mentions no time of payment, the law adjudges it to be due immediately, and parol evidence is not admissible to show a different time of payment agreed upon by the parties at the time it was executed."||

These and other cases were relied on by the court, and in addition to them *Barber* v. *Brace*, in the Supreme Court of Connecticut,¶ was cited by counsel, to show that "a parol agreement anterior to a written contract is inadmissible."

The question, as the reader familiar with the decisions on the subject will see, is one upon which opinions not consistent with some of those thus above quoted have been

---

\* 8 Barbour, 205.     † 25 Id. 17.     ‡ Davies, 61.     § 19 Howard, 312.

|| Niles *v.* Culver, 8 Barbour, 209; Thompson *v.* Ketchum, 8 Johnson, 109; Hunt *v.* Adams, 7 Massachusetts, 518; S. C., 6 Id. 519; Pattison *v.* Hull, 9 Cowen, 747.

¶ 3 Connecticut, 9.

given in certain courts. In this court the question had never been specifically passed upon. On that account and for the importance of the question, the argument against the view in the courts below, is presented with more than ordinary fulness.

*Mr. E. Casserly, for the plaintiff in error:*

I. The objection to the parol proof is put on a rule of evidence. What is the rule of evidence? Does it apply in this case?

1. The rule is exactly stated by our leading text writer,[*] who holds it with all due strictness:

"Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument."

Mr. Starkie[†] states the rule substantially the same way. And he adds, as " a general rule,"

"Oral and extrinsic evidence is admissible to rebut a presumption of law or equity. Here it is not offered as a substitute for the written evidence, but to remove an impediment, which would otherwise have obstructed or altered its operation."

The writer,[‡] who, more than any other, has discussed thoroughly the whole subject, states the rule explicitly:

"The true meaning of the rule is, that such evidence shall never be received to show that the intention of the parties was directly opposite to that which their language expresses, or substantially different from any meaning the words they have used upon any construction will admit or convey."

*Barrett* v. *Insurance Company*,[§] is almost in the same language as that last above quoted.

In *Parks* v. *Gen. Int. Co.*,[||] it is held that a condition or

---

[*] Greenleaf. On Evidence, vol. 1, § 275, and see note 3.

[†] On Evidence, by Sharswood, *648, *713.

[‡] Duer. On Insurance, vol. 1, 176, § 27; and see Ib. 276, § 70; 2 Id. 668-71, §§ 17, 18.

[§] 7 Cushing, 175.             [||] 5 Pickering, 37-38.

implied undertaking, not expressed in the terms of the policy, may be superseded by a previous verbal or written statement.

In *Susquehanna Company* v. *Evans*,[*] Judge Washington states the rule to be:

"The reasons which forbid the admission of parol evidence to alter or explain written agreements do not apply to those contracts implied by operation of law."

In *Brent's Executors* v. *Bank*,[†] parol proof was admitted of an agreement that payment of a promissory note should be demanded at a particular bank, and not personally of the maker; the note being silent on the subject. Marshall, C. J., says:

"This is not an attempt to vary a written instrument. The place of demand is not expressed on the face of the note, and the necessity of a demand on the person when the parties are silent is a mere inference of law, which is drawn only when they are silent. A parol agreement puts an end to this inference. . . . This does not alter the instrument, so far as it goes, but supplies extrinsic circumstances which the parties are at liberty to supply."

2. Does the rule apply to this case? How did the proposed parol evidence "contradict or vary the terms of the written instrument"—in this case, the bill of lading? By its "terms" the bill makes no provision whatever for stowage of the iron shipped, still less for stowage of it in any particular place. Clearly, then, parol proof of an agreement for a deck stowage cannot be said to "contradict or vary the terms" of the bill. Suppose we read the bill as though it contained the agreement which we offered to prove— "said iron to be carried on deck." In what respect does this provision "contradict or vary the terms of the written contract?" Since it does not, but is obviously in accord with them, how can parol proof of it be said to do so?

---

[*] 4 Washington's Circuit Court. 481.

[†] 1 Peters, 89, 92; see also Rol un v. Hanson, 11 Cushing, 44, 46 · Weston v. Chamberlin, 7 Id. 404, and cases cited, 406.

3  As the bill, by its "terms," provides nothing as to the place of stowage, and as tne law allows the parties to make what contracts they choose as to that particular subject, and in what manner they choose, by writing or by words, it is incorrect to say that parol proof of a contract, or consent by the shipper to stow on deck, is within any rule against parol proof, either as "contradicting or varying" "the terms" of the writing, *or* as substituting parol when the law demands a writing.*

II. This argument cannot be answered. It is, therefore, sought to be eluded. It is said that though by its terms the common or clean bill of lading is silent as to the stowage, yet that it "imports that the goods are to be safely stowed under deck;" that this is "a condition tacitly annexed to the contract by operation of law;" and that this implied contract is so conclusive, that the law will not admit parol evidence to show that the parties contracted for a stowage on deck.

1. Is it in any sense correct to say, that the common bill of lading "imports a stowage safely under deck," or that such is "the condition tacitly annexed to the contract by operation of law?" We think not. On the contrary, we submit that what the instrument "imports" or "implies" is not a stowage either in any particular place, or in any particular manner; but simply a stowage as to place and manner, such as is authorized by the custom or usage of trade, whether in respect to the particular goods in the bill of lading, or to the particular voyage which the ship is to make.

2. The law of common carriers of goods had its rise in "t1e custom of the realm." In suit against a carrier, the ancient practice was to set out and prove the general custom, until the custom became in time so well settled, that the courts took judicial notice of it, which is itself a substitute for proof, if not a mode of proof, and is at times the result of actual

* Vernard *v.* Hudson, 3 Sumner, 406, 407; Lowry *v.* Russell, 8 Pickering, 360, 362; Sayward *v.* Stevens, 3 Gray, 97, 102; Barrett *v.* Ins. Co., 7 Cushing, 175; Ex'rs of Brent *v.* Bank, 1 Peters, 92; also the other cases cited *supra.*

inquiry into proofs.*  The same law to-day rests mainly
in the custom of trade; perhaps, in all respects, except
where either some rule or policy of the law, or some valid
agreement between the parties, forbids.†  In the absence
of such rule, policy, or agreement, a common carrier is
obliged only to carry such goods, in such parcels, and with
such stowage, in such conveyance, by such route, at such
charges, with such dispatch, and such delivery, as are cus-
tomary in his line of business.  And, in practice, almost
universally the law and the parties wisely agree in leaving
to the custom all these important subjects, except perhaps
the charges.

3.  Like the other two great instruments of commerce—
the charter-party and the policy of marine insurance—the
bill of lading in its "terms" is not a complete contract.  It is
a brief writing in which only the heads of the contract are
expressed; the receipt of the goods on board; the places
whence and where they are to be carried; the person to
whom they are to be delivered in like good order, &c.; and
at what freight.  In a bill of lading as in the others—and,
indeed, even more so—the parties are silent as to the mode
and manner in which the heads of the contract are to be
performed.  These they leave to the custom of the trade.
It is a presumption of law that they have made their con-
tract as to the mode and manner, on this basis.

4.  This is more true of the subject of stowage than it is
perhaps of any other matter under the bill of lading.

Let us refer first to some of the other instances.

a.  The express contract, to carry to the place of destina-
tion, means, by construction of law, with all reasonable dis-
patch.  Yet, it is held that this contract is controlled by
proof of a custom on the Ohio, to allow boats a delay of a
month or more, while waiting the rise of water.‡

b.  So, upon the question, as to when the carrier's respon-

---

* 1 Greenleaf on Evidence, §§ 6, 6a, Redfield's edition.
† Redfield on Carriers, §§ 210–219; 2 Redfield on Railways, 131–135, § 183.
‡ Broadwell v. Butler, 6 McLean, 296; Accord. The Convoy's Wheat,
8 Wallace, 230.

sibility for the goods terminates. The express contract of
the bill of lading to deliver to A. is controlled by the usage.*

*c.* The whole question of delivery, time, mode, place, is a
question of the custom of business.† As where the point
was as to the duty of the ferryman to carry goods up a
slip.‡

*d.* The express contract in the bill of lading here is for a
voyage from Portland to San Francisco. This calls for a
direct voyage, without deviation; yet it may be controlled
by proof of a usage to make the deviation complained of,§
or of the shipper's knowledge of the intent to make it.‖

5. The power of usage over the subject of stowage as to
which the common bill of lading is silent, is still greater.
Indeed stowage is completely the creature of usage. Hence
it is, doubtless, that the common bill of lading is silent as to
it. Under such a bill, whatever usage authorizes, as to
either the place or manner of stowage, whether as respects
the particular goods to be carried, or other goods in the
same ship, or the particular voyage or class of ships in which
they are to be carried, may lawfully be done by the carrier.
It may be done, though some other place or manner of
stowage might be safer for the particular goods themselves
or for other goods in the same vessel.

Not only does usage control, but what is the usage varies
with the circumstances. In one class of cases the usage
turns upon the nature of the goods to be carried; in another
class upon the nature of the voyage on which they are to be
carried.

*a.* Thus, in all trades, where the nature of the goods is
such that they are dangerous to the ship or cargo—as cor-
rosive or inflammable oils and other liquids—the usage is,
that they may be carried on deck; where in case of accident

---

* 2 Redfield on Railways, 60, 65, § 175.

† 1 Smith's Leading Cases, *319.          ‡ Ib *304.

§ Lowry *v.* Russell, 8 Pickering, 360, 362.

‖ The Mary Hawes, cited in 1 Parsons on Shipping and Admiralty, 191,
note 1; and see as to the power of custom of trade, Halsey *v.* Brown, 3
Day, 346, approved in Renner *v.* Bank, 9 Wheaton, 582.

they can do the least harm and may be most readily cast overboard.*

*b.* In like manner live stock are carried on deck, for the sake of their health, and perhaps of convenience of handling them.†

*c.* A usage to carry lumber on deck, between Quebec and London, was sustained on demurrer in *Gould* v. *Oliver.*‡

*d.* The usage to carry deck loads is more favored in the case of a steamer plying coastwise than in that of a sailing vessel.§

*e.* And it is affected by the peculiar build of the vessel, as in the case of propellers with two decks on our great lakes.||

*f.* In this court the doctrine is established, that what goods shall be carried in the same ship, and how and where they shall be stowed in reference to each other, is controlled by usage, rather than by the greater or less safety of the goods. The principle of this doctrine is conclusive in our favor.¶

6. Hence, it is not correct to say that a clean bill "imports that the goods are to be stowed safely under deck;" or that it is the "condition tacitly annexed to the contract by operation of law;" or "a rule of law"—that they shall be so stowed. These phrases, which all come to the same thing, are but half truths. They state the effect, not the cause. If they are correct at all, it is because the usage calls for such a stowage under deck. The "import," or the "tacit condition," or "the rule of law" comes back after all to the usage.

Either this is the true view, or else you cannot give any

---

* De Costa *v.* Edmunds, 4 Campbell, 141, 142.

† Brown *v.* Cornwell, 1 Root, 60; Milward *v.* Hibbert, 3 Adolphus & Ellis, N. S. *120, 131 to 137-8.

‡ 4 Bingham's New Cases, *134, *140, *143.

§ Harris *v.* Moody, 4 Bosworth, 210, 218-219, 221; Affirmed, 30 New York, 266, 273, 274.

|| Gillett *v.* Ellis, 11 Illinois, 579, 581.

¶ Rich *v.* Lambert, 12 Howard, 356, 357; Clark *v.* Barnwell, Ib. 281, 282; Baxter *v.* Leland, 1 Blatchford, Circuit Court, 526, 527. See note of American editor, 5 C. B., N. S. *164, and cases cited.

well-founded reason why under the same form of words, in the "clean" bill of lading, the carrier's liability differs so greatly, so that in one case he is liable if he carries on deck; in another he is not; while in a third case he is liable unless he does carry on deck.

On this point of the presumption more will be said presently.

The following proposition, then, which is the sum of the preceding authorities, we submit as the true statement of the law:

FIRST POINT. *The common bill of lading, such as that in this case, being silent on the subject of stowage, neither imports nor implies any particular place of stowage of goods. What it imports or implies is simply such a place of stowage as is according to the usage of the trade in regard to such goods on such a voyage.*

III. Next we say, as a

SECOND POINT. *The reason of this rule is, that there being a usage of the trade, that on such a voyage, such goods shall be stowed under deck, it is a presumption of law, in the absence of express words to the contrary, that the parties have contracted for a place of stowage according to the usage.*

1. That the effect of a "clean" bill of lading is simply to raise such a presumption is clear upon principle and on authority.

In trade or commerce the general usage is constantly admitted to expound the contracts of parties, as well where the contract is silent as where the language in which it speaks has by usage a technical meaning. This is because of the presumption arising upon the general usage, that the parties have intended to contract in accordance with the usage.*

*As applied to stowage.* In *Vernard* v. *Hudson*,† it is held that the presumption that goods shipped under the common bill

---

* Starkie on Evidence, by Sharswood, *75–6, *710; 1 Greenleaf on Evidence, § 292; Best, Presumptions, *132; 1 Duer on Insurance, lecture 2, pt. 2, p. 254; Ib. 265, § 59; 1 Arnould on Insurance, 278 (London, 1866).

† 3 Sumner, 405–7.

of lading are to be put under deck, is a presumption arising from the ordinary course of business.

So in *The Waldo :*[*]

" The bill of lading is what is called a clean bill; that is, it is silent as to the mode of stowing the goods. . . . The usual and only safe mode of carrying goods is under deck; and, when the contract is entered into, it is presumed to be the intention of the parties that the goods shall be stowed and carried in the usual way, unless there is an agreement to the contrary."

To the same effect is *The Paragon,*[†] *The Rebecca,*[‡] *The Peytona.*[§]

THIRD POINT. *The presumption of law that under such a bill of lading the parties have contracted on the basis of the usage, and for a stowage under deck in accordance with the usage, is but a primâ facie presumption, and may be rebutted by parol proof of an agreement for a stowage on deck.*

1. The presumption mentioned is one arising upon an extrinsic fact; *i. e.*, upon the usage of trade. Whether the usage is such as to require extrinsic proof, or is so general— as in this case—as to dispense with such proof and to rest in judicial notice, is not material. In either case the presumption may be rebutted by parol proof.

2. In close connection with the rule, as to the presumption arising upon the usage of trade, is found this other rule, that " oral and extrinsic evidence is admissible to rebut a presumption of law or equity."[||] Mr. Duer justly relies on this rule in support of his views in favor of the admission of parol evidence to rebut a presumption arising upon a usage.[¶]

Lord Mansfield, speaking of rebutting by parol evidence a presumption of law, in *Brady* v. *Cubitt,*[**] declared:

---

[*] Daveis, 161, 166–**167**.     [†] Ware, 322.     [‡] Ib. 209, 210.
[§] 2 Curtis, 21.     [||] 1 Starkie on Evidence, *713.
[¶] 2 Duer on Insurance, 669, and note *a;* and see the cases cited, Starkie, [§§] 713–716, in illustration; also 1 Greenleaf, § 296 and note 1.
[**] Douglas, 31.

"I am clear that this presumption, like all others, may be re-butted by every sort of evidence."

3. In *Vernard* v. *Hudson,* already quoted *supra,* 588, the distinct question arose and was decided. The libel was for freight due on a common bill of lading for goods shipped. The defence was that they were stowed on deck and damage thereby caused. The ship offered parol proof of a contract for stowage on deck, and one question was, whether such proof was admissible within the rule against parol evidence. Judge Story says (406, 407):

"I take it to be very clear, that where goods are shipped under the common bill of lading, it is presumed that they are shipped to be put under deck, as the ordinary mode of stowing cargo. This presumption may be rebutted by showing a positive agreement between the parties that the goods are to be carried on deck; or it may be deduced from other circumstances, such, for example, as the goods paying the deck freight only. The admission of proof to this effect is perfectly consistent with the rules of law; for it neither contradicts nor varies anything contained in the bill of lading, but it simply rebuts a presumption arising from the ordinary course of business. The *onus* *probandi* is, therefore, on the libellant to establish such an agreement."

In *Sayward* v. *Stevens,** the bill of lading provided for a deck stowage of part of the plaintiff's goods. Other goods of his were, however, stowed on deck. The whole deck load was jettisoned on the voyage. The court says it was obliged—

"To determine whether the contract rests solely in the bill of lading or whether it can be varied or explained by parol proof of the acts and conduct of the parties," &c.

The effect of a clean bill of lading is discussed, and though the court has "no occasion to determine" whether or not the obligation under such a bill to stow under deck "is a

* 3 Gray, 97.

mere presumption, arising from the usual mode of conveying merchandise in vessels and liable to be rebutted by proof of a parol contract," &c., it intimates a strong opinion on the rule of evidence.   It says:

"As bills of lading do not usually contain any express stipulation concerning the place or mode of stowing the cargo—these being left to the care and discretion of the master of a vessel —the admission of such evidence would not seem to be a violation of the salutary rule, that written contracts cannot be varied or controlled by parol proof."

The decision, which was unanimous, was by Shaw, Dewey, and Metcalf, JJ.

This case well illustrates when parol proof varies or contradicts the terms of the bill of lading and is therefore inadmissible.   The express provision for a deck stowage of a part of the goods excluded parol proof of a consent to such a stowage of any other part.

To this effect, merely, is *Garrison* v. *Memphis Insurance Co.*, cited against us by the District judge, though there the parol proof was admitted but held insufficient.

4. By the express contract in the common bill of lading, for a voyage from A. to B., the presumption is of an agreement for a direct voyage.   This is a very important presumption, at least as much so to the interests of commerce as the presumption of a stowage under deck.   But, being like that, a presumption arising out of the usage of business, it may be rebutted by parol proof of the shipper's personal knowledge that the master intended to deviate.*   The point was made against the proof; but it was not sustained.   The court says:

"There is nothing in the evidence contradicting the express terms of the bill of lading," &c.

In the *Mary Hawes*;† decided by Lowell, J., in the District Court for Massachusetts, it was held, that proof of a usage

---

\*  Lowry v. Russell, 8 Pickering, 360, 362.

†  Cited in 1st Parsons on Shipping and Admiralty, 191, **note 1.**

to make the deviation, or of the shipper's knowledge of the intent to make it, was admissible.

5. By agreement the merchant may have charge of the stowage of his own goods.* This is not unusual where the goods require special care in the handling and stowage. If the merchant should sue the ship for the loss of his goods stowed by himself on deck, as in a deck-house, is it possible that the form of a clean bill of lading would suffice to shut out the parol proof that the stowage was by the merchant himself?

6. So, the rule is that under the common bill of lading the title to the goods is in the consignee. This, too, is a presumption arising out of the usual course of business, and may be rebutted by parol proof.† On the same principle the warranty of title implied in a sale of chattels in the vendor's possession may be rebutted by parol, whether the contract of sale is oral or written.‡

7. The rule that parol proof is admitted to rebut presumptions arising from the usage or ordinary course of business, where the written contract is silent, prevails in analogous cases in the law of marine insurance, under the policy, and for the same reasons as under the bill of lading.

*a.* Take the case of deviation. From the fact of insurance, it is presumed that the parties agreed for an adventure, to be pursued in the usual manner; in other words, for a direct voyage, without voluntarily changing the risks. This, too, being a presumption arising upon the usage of trade, may be rebutted by parol proof of representations.§

*b.* Take from the same law of insurance, a still stronger illustration. It is now settled law in this country that even the warranty implied in every marine policy, that the vessel insured is seaworthy, as the fundamental fact of the con-

---

* Abbott on Shipping, 287.          † The Sally Magee, 3 Wallace, 457.

‡ Hilliard on Sales, 391 (edition of 1869); Miller *v.* Van Tassel, 24 California, 465. Accord. Story, Sales, § 367*a* (1871); McCoy *v.* Artcher, 3 Barbour, 331.

§ 1 Phillips on Insurance, 586, §§ 1040, 1041; and see Urquhart *v.* Barnard, 1 Taunton, 450. Also *supra;* Lowry *v.* Russell; The Mary Hawes.

tract, may be superseded by parol proof of previous verbal "representations" of the assured party.* The principle of the rule is, says Mr. Duer, that the warranty of seaworthiness is not implied from any terms of the policy, but rests on the presumption that the seaworthiness of the vessel is understood by the parties to be the basis of their contract. Adopting this view of his, it is clear enough that, when this presumption is repelled, by parol proof of representations to the contrary, such representations become a part of the contract, as they do by the American law, and completely displace the presumption of a warranty.

8. Now, since in regard to the policy and the charter-party, parol proof is admitted to rebut by extrinsic facts, the presumption arising upon the usual course of business—or the "inference of law," in the words of C. J. Marshall—with respect to matters of which the writing is silent, why should not the same rule of evidence apply to the bill of lading? Since these three great instruments work together in one design for the interests of commerce, to speed or to guard them on every sea, why should they not rest before the law upon the same or similar general principles for their interpretation?

IV. In some of the most noted cases in respect to goods carried on deck under a clean bill of lading, parol proof of the merchant's agreement that his goods might be so carried, or of circumstances from which it might be inferred, was admitted without objection from eminent counsel. A few will be cited.

In *Lawrence v. Minturn*,† in this court, there was a written memorandum for a deck stowage, but it was of course merged in the bill of lading executed a month afterwards.

In *Gould v. Oliver*,‡ the suit was on a charter-party, for lumber stowed on deck, and jettisoned during the voyage.

---

* 2 Duer, 671, 672, 673, and notes; 1 Phillips on Insurance, 334, 415, edition of 1853; Maude & Pollock on Merchant Shipping, 393, and see note *d*, adopting Mr. Duer's view; 1 Arnould on Insurance, *498–9, *499, American edition, 1850; 2 Kent, *284, note *d*.

† 17 Howard, 106.    ‡ 2 Manning & Granger, 208, 214, 216, 219, 235.

The defendant sought to show by parol, a consent, by knowledge and approval of the plaintiffs' superintendent, to the stowage. No objection was made by the counsel for the plaintiffs, Sir Thomas Wilde and Mr. (now Baron) Wightman. The proof held insufficient only for want of authority in the superintendent.

In *The Rebecca*, already cited, parol proof of consent to stow on deck, under common bill of lading, received and considered by the court.

And *The Waldo* is to the like effect.

In *Sproat* v. *Donnell*,\* proof was admitted that the merchant knew of the deck stowage, and made no objection.

V. As to the cases cited against the admissibility of the parol proof,† it must suffice to notice those bearing with some directness on the point.

*Creery* v. *Holly* was not a suit between the parties to a bill of lading. It was a suit by vendor against vendee for the value of a quantity of iron shipped from New York to Baltimore by the former to the latter, upon orders from him. Though there was a clean bill of lading, the iron was stowed on deck, and in stress of weather cast overboard. The defendant offered to show that the plaintiff (the vendor) had agreed orally that the goods might be shipped on deck. This was objected to, as being within the rule against parol evidence, but admitted. For aught that appears, the defendant was neither a party nor privy to the bill of lading, and his parol evidence was admissible to show what amounted to non-delivery of the goods sold through the fault of the vendor. The case is one of doubtful impression.

*Barber* v. *Brace* is still more unsatisfactory as an authority. Parol proof of an agreement to stow the goods on deck, when first offered on the trial below, was excluded. It was afterwards admitted, to contradict the plaintiff's witnesses, and was limited to that by the judge, who, however, charged the jury to find for the defendant (the carrier), if there was

---

\* 26 Maine, 187.

† Cited by the District Court, or by counsel, see *supra*, pp 580–81.

an agreement to stow on deck. A verdict for the defendant was sustained.

*The Waldo* was a case of deck stowage, under the common bill of lading, and of an attempt to prove by parol an agreement for such a stowage. The decision is in terms against the admission of the parol proof. Yet the eminent judge, as if not wholly satisfied with his decision excluding the parol proof, goes fully into it in another aspect of the case, and holds it insufficient to prove the agreement so to stow.

*White* v. *Van Kirk* was the case of a bill of lading for a voyage from Albany to Baltimore. The question was which of two routes—an inside or an outside route—neither of which was specified, should have been taken. The master took the outside route and lost the goods. The merchant offered parol proof of an agreement with the master for the inside or safer route. It was rejected by the court, which at the same time, however, as if not quite sure of its law, held the agreement not proved. As an authority, this case is worse than doubtful.

The same general criticism applies to *Niles* v. *Culver*. The writing there was the carrier's receipt for " 245 barrels of apples, to forward to New York, at 44 cents per barrel; advanced $10, and cartage $4.81." The court held this to be not a receipt, but a contract, incapable of being varied by parol proof, &c. It doubts a case which holds that the admission in the bill of lading that the goods shipped are in good order is not conclusive. It excluded all parol evidence of an agreement as to many matters on which the receipt was silent, the time of forwarding, the particular boat, and that there was to be no transshipment.

Most of the other cases cited against us are cases on promissory notes. Of these it suffices to say that the peculiar negotiable character of such instruments makes them so unlike the common bill of lading as to deprive such cases of much application here.

*Mr. C. E. Whitehead (a brief of Mr. J. E. Ward being filed),* contra.

Mr. Justice CLIFFORD delivered the opinion of the court.

Ship-owners, as carriers of merchandise, contract for the safe custody, due transport and right delivery of the goods; and the shipper, consignee, or owner of the cargo contracts to pay the freight and charges; and by the maritime law, as expounded by the decisions of this court, the obligations of the ship-owner and the shipper are reciprocal, and it is equally well settled that the maritime law creates reciprocal liens for the enforcement of those obligations, unless the lien is waived by some express stipulation, or is displaced by some inconsistent and. irreconcilable provision in the charter-party or bill of lading.* Shippers should in all cases require a bill of lading, which is to be signed by the master, whether the contract of affreightment is by charter-party or without any such customary written instrument. Where the goods of a consignment are not all sent on board at the same time, it is usual for the master, mate, or other person in charge of the deck, and acting for the carrier, to give a receipt for the parcels as they are received, and when the whole consignment is delivered, the master, upon those receipts being given up, will sign two or three, or, if requested, even four bills of lading in the usual form, one being for the ship and the others for the shipper. More than one is required by the shipper, as he usually sends one by mail to the consignee or vendee, and if four are signed he sends one to his agent or factor, and he should always retain one for his own use. Such an instrument acknowledges the bailment of the goods, and is evidence of a contract for the safe custody, due transport, and right delivery of the same, upon the terms, as to freight, therein described, the extent of the obligation being specified in the instrument. Where no exceptions are made in the bill of lading, and in the absence of any legislative provisions prescribing a different rule, the carrier is bound to keep and transport the goods safely, and to make right delivery of the same at the port of destination,

---

.* The Eddy, 5 Wallace, 494; The Bird of Paradise, 5 Id. 555; Bags of Linseed, 1 Black, 112.

unless he can prove that the loss happened from the act of
God or the public enemy, or by the act of the shipper or
owner of the goods. Stipulations in the nature of exceptions
may be made limiting the extent, of the obligation of the
carrier, and in that event the bill of lading is evidence of
the ordinary contract of affreightment, subject, of course, to
the exceptions specified in the instrument; and in view of
that fact the better description of the obligation of such a
carrier is that, in the absence of any Congressional legisla-
tion upon the subject, he is in the nature of an insurer, and
liable in all events and for every loss or damage, however
occasioned, unless it happened by the act of God or the
public enemy, or by some other cause or accident, without
any fault or negligence on the part of the carrier, and ex-
pressly excepted in the bill of lading.*

Seventy-five tons of pig-iron were shipped by the libel-
lants, on the eighth of May, 1868, on board the bark Dela-
ware, then lying in the port of Portland, Oregon, to be
transported from that port to the port of San Francisco, for
the freight of four dollars and fifty cents per ton, to be de-
livered to the shippers or their assigns at the port of destina-
tion, they paying freight as therein stipulated, before de-
livery if required, with five per cent. primage and average
accustomed. Dangers of the seas, fire, and collision were
excepted in the bill of lading, and the statement at the close
of the instrument was, " vessel not accountable for breakage,
eakage, or rust."

Process was served and the claimant appeared and filed
an answer, in which he admits the shipment of the iron and
the execution of the bill of lading exhibited in the record.
Sufficient also appears in the record to show that the voyage
was performed and that but a small portion of the iron
shipped, to wit, some thirteen or fourteen thousand pounds,
was ever delivered to the consignees, and that all the resi-
due of the shipment was thrown overboard as a jettison

---

* The Cordes, 21 Howard, 23 ; Clark v. Branwell, 12 Id. 272 ; Elliott v.
Rossell, 10 Johnson, 7.

during the voyage, which became necessary by a peril of the sea, for the safety of the other associated interests and for the preservation of the lives of those on board. Sacrificed as all that portion of the shipment was as a jettison in consequence of a peril of the sea, excepted in the bill of lading, the claimant insists that the libellants have no claim against the ship, and that the libellants as the shippers of the iron must bear their own loss.

Evidence was exhibited by the claimant sufficient to show that the allegations of the answer that the iron, not delivered, was sacrificed during the voyage as a jettison in consequence of a peril of the sea are true, but the libellants allege that the iron was improperly stowed upon the deck of the vessel, and that the necessity of sacrificing it as a jettison arose solely from that fact, and that no such necessity would have arisen if it had been properly stowed under deck, as it should have been by the terms of the contract specified in the bill of lading. That the iron not delivered was stowed on deck is admitted, and it is also conceded that where goods are stowed in that way without the consent of the shipper the carrier is liable in all events if the goods are not delivered, unless he can show that the goods were of that description, which, by the usage of the particular trade, are properly stowed in that way, or that the delivery was prevented by the act of God or the public enemy, or by some other cause or accident, without any fault or negligence on the part of the carrier and expressly excepted in the bill of lading.

Goods, though lost by perils of the sea, if they were stowed on deck without the consent of the shipper, are not regarded as goods lost by the act of God within the meaning of the maritime law, nor are such losses regarded as losses by perils of the sea which will excuse the carrier from delivering the goods shipped to the consignee unless it appears that the manner in which the goods were stowed is sanctioned by commercial usage, or unless it affirmatively appears that the manner of stowage did not, in any degree, contribute to the disaster; that the loss happened without

any fault or negligence on the part of the carrier, and that it could not have been prevented by human skill and prudence, even if the goods had been stowed under deck, as required by the general rules of the maritime law.*

Enough appears in the record to show that all the iron not delivered to the consignees was stowed on deck, and there is no proof in the case to show that the usage of the trade sanctioned such a stowage in this case, or that the manner in which it was stowed did not contribute both to the disaster and to the loss of the goods.†

None of these principles are controverted by the claimant, but he insists that the iron not delivered was stowed on deck by the consent of the shippers and in pursuance of an oral agreement between the carrier and the shippers consummated before the iron was sent on board, and before the bill of lading was executed by the master. Pursuant to that theory testimony was offered in the District Court showing that certain conversations took place between the consignee of the bark and the agent of the shippers tending to prove that the shippers consented that the iron in question should be stowed on the deck of the vessel. Whether any express exception to the admissibility of the evidence was taken or not does not distinctly appear, but it does appear that the question whether the evidence was or not admissible was the principal question examined by the District Court, and the one upon which the decision in the case chiefly turned. Apparently it was also the main point examined in the Circuit Court, and it is certain that it has been treated by both sides in this court as the principal issue involved in the record, and in view of all the circumstances the court here decides that it must be considered that the question as to the admissibility of the evidence is now open for revision, as the decree for the libellant was equivalent to a ruling rejecting the evidence offered in defence or to a ruling granting a motion to strike it out after it had been admitted, which is a course

---

* Lawrence et al. v. Minturn, 17 Howard, 114; The Peytona, 2 Curtis, 23.

† Gould v. Oliver, 4 Bingham's New Cases, 142; Story on Bailment, § 531.

often pursued by courts in cases where the question deserves examination. What the claimant offered to prove was that the iron was stowed on deck with the consent of the shippers, but the libellants objected to the evidence as repugnant to the contract set forth in the bill of lading, and the decree was for the libellants, which was equivalent to a decision that the evidence offered was incompetent. Dissatisfied with that decree the respondent appealed to the Circuit Court, where the decree of the District Court was affirmed, and the same party appealed from that decree and removed the cause into this court for re-examination.

Even without any further explanation it is obvious that the only question of any importance in the case is whether the evidence offered to show that the iron in question was stowed on deck with the consent of the shippers was or was not properly rejected, as it is clear if it was, that the decree must be affirmed; and it is equally clear, if it should have been admitted, that the decree must be reversed.*

Different definitions of the commercial instrument, called the bill of lading, have been given by different courts and jurists, but the correct one appears to be that it is a written acknowledgment, signed by the master, that he has received the goods therein described from the shipper, to be transported on the terms therein expressed, to the described place of destination, and there to be delivered to the consignee or parties therein designated.† Regularly the goods ought to be on board before the bill of lading is signed, but if the bill of lading, through inadvertence or otherwise, is signed before the goods are actually shipped, as if they are received on the wharf or sent to the warehouse of the carrier, or are delivered into the custody of the master or other agent of the owner or charterer of the vessel and are afterwards placed on board, as and for the goods embraced in the bill

---

* Angell on Carriers, § 212; Redfield on Carriers, §§ 247 to 269; The St. Cloud, Brown & Lushington Adm. 4.

† Abbott on Shipping, 7th Am ed. 323; O'Brien v. Gilchrist 34 Maine, 558; 1 Parsons on Shipping, 186; Machlachlan on Shipping, 338; Emerigon on Ins. 251.

of lading, it is clear that the bill of lading will operate on those goods as between the shipper and the carrier by way of relation and estoppel, and that the rights and obligations of all concerned are the same as if the goods had been actually shipped before the bill of lading had been signed.[*] Such an instrument is twofold in its character; that is, it is a receipt as to the quantity and description of the goods shipped, and a contract to transport and deliver the goods to the consignee or other person therein designated, and upon the terms specified in the same instrument.[†]  Beyond all doubt a bill of lading, in the usual form, is a receipt for the quantity of goods shipped and a promise to transport and deliver the same as therein stipulated.[‡]  Receipts may be either a mere acknowledgment of payment or delivery, or they may also contain a contract to do something in relation to the thing delivered.  In the former case, and so far as the receipt goes only to acknowledge payment or delivery, it, the receipt, is merely *primâ facie* evidence of the fact, and not conclusive, and therefore the fact which it recites may be contradicted by oral testimony, but in so far as it is evidence of a contract between the parties it stands on the footing of all other contracts in writing, and cannot be contradicted or varied by parol evidence.[§]  Text writers mention the bill of lading as an example of an instrument which partakes of a twofold character, and such commentators agree that the instrument may, as between the carrier and the shipper, be contradicted and explained in its recital that the goods were in good order and well conditioned, by showing that their internal state and condition was bad or not such as is represented in the instrument, and in like manner, in respect to any other fact which it erroneously

---

[*] Rowley v. Bigelow, 12 Pickering, 307 ; The Eddy, 5 Wallace, 495.

[†] Machlachlan on Shipping, 338-9 ; Smith's Mercantile Law, 6th ed. 308.

[‡] Bates v. Todd, 1 Moody & Robinson, 106 ; Berkley v. Watling, 7 Adolphus & Ellis, 29 ; Wayland v. Mosely, 5 Alabama, 430 ; Brown v. Byrne, 3 Ellis & Blackburne, 714 ; Blaikie v. Stembridge, 6 C. B., N. S. 907.

[§] 1 Greenleaf on Evidence, 12th ed , § 305 ; Bradley v. Dunipace, 1 Hurlstone & Colt, 525.

recites, but in all other respects it is to be treated like other written contracts.*

Bills of lading when signed by the master, duly executed in the usual course of business, bind the owners of the vessel if the goods were laden on board or were actually delivered into the custody of the master, but it is well-settled law that the owners are not liable, if the party to whom the bill of lading was given had no goods, or the goods described in the bill of lading were never put on board or delivered into the custody of the carrier or his agent.† Proof of fraud is certainly a good defence to an action claiming damages for the non-delivery of the goods, but it is settled law in this court that a clean bill of lading imports that the goods are to be safely and properly stowed under deck, and that it is the duty of the master to see that the cargo is so stowed and arranged that the different goods may not be injured by each other or by the motion or leakage of the vessel, unless by agreement that service is to be performed by the shipper.‡ Express contracts may be made in writing which will define the obligations and duties of the parties, but where those obligations and duties are evidenced by a clean bill of lading, that is, if the bill of lading is silent as to the mode of stowing the goods, and it contains no exceptions as to the liability of the master, except the usual one of the dangers of the sea, the law provides that the goods are to be carried under deck, unless it be shown that the usage of the particular trade takes the case out of the general rule applied in such controversies.§ Evidence of usage is admissible in

---

* Hastings v. Pepper, 11 Pickering, 42; Clark v. Barnwell et al., 12 Howard, 272; Ellis v. Willard, 5 Selden, 529; May v. Babcock, 4 Ohio, 346; Adams v. Packet Co., 5 C. B., N. S. 492; Sack v. Ford, 13 C. B., N. S. 100.

† The Schooner Freeman, 18 Howard, 187; Maude & Pollock on Shipping, 233; Grant v. Norway, 10 C. B. 665; Zipsy v. Hill, Foster & Finelly, 573; Meyer v. Dresser, 16 C. B., N. S. 657.

‡ The Cordes, 21 Howard, 23; Sandeman v. Scurr, Law Reports, 2 Q. B. 98; Swainston v. Garrick, 2 Law Journal, N. S. Exchequer, 355; African Co. v. Lamzed, Law Reports, 1 C. P. 229; Alston v. Hering, 11 Exchequer, · 822.

§ Abbott on Shipping (7th Am. ed.), 345; Smith v. Wright, 1 Cain, 43;

mercantile contracts to prove that the words in which the contract is expressed, in the particular trade to which the contract refers, are used in a particular sense and different from the sense which they ordinarily import; and it is also admissible in certain cases, for the purpose of annexing incidents to the contract in matters upon which the contract is silent, but it is never admitted to make a contract or to add a new element to the terms of a contract previously made by the parties. Such evidence may be introduced to explain what is ambiguous, but it is never admissible to vary or contradict what is plain. Evidence of the kind may be admitted for the purpose of defining what is uncertain, but it is never properly admitted to alter a general rule of law, nor to make the legal rights or liabilities of the parties other or different from what they are by the common law.* Cases may arise where such evidence may be admissible and material, but as none such was offered in this case it is not necessary to pursue that inquiry. Exceptions also exist to the rule that parol evidence is not admissible to vary or contradict the terms of a written instrument where it appears that the instrument was not within the statute of frauds nor under seal, as where the evidence offered tends to prove a subsequent agreement upon a new consideration. Subsequent oral agreements in respect to a prior written agreement, not falling within the statute of frauds, may have the effect to enlarge the time of performance, or may vary any other of its terms, or, if founded upon a new consideration, may waive and discharge it altogether.† Verbal agreements, however, between the parties to a written contract, made before or at the time of the execution of the contract, are in general inadmissible to contradict or vary its terms

---

Gould v. Oliver, 2 Manning & Granger, 208; Waring v. Morse, 7 Alabama, 343; Falkner v. Earle, 3 Best & Smith, 363.

* Oelricks v. Ford, 23 Howard, 63; Barnard v. Kellogg et al., 10 Wallace, 383; Simmons v. Law, 3 Keyes, 219; Spartali v. Benecke, 10 C. B. 222.

† Emerson v. Slater, 22 Howard, 41; Gross v. Nugent, 5 Barnewall & Adolphus, 65; Nelson v. Boynton, 3 Metcalf, 402; 1 Greenleaf on Evidence, 303; Harvey v. Grabham, 5 Adolphus & Ellis, 61.

or to affect its construction, as all such verbal agreements are considered as merged in the written contract.*

Apply that rule to the case before the court and it is clear that the ruling of the court below was correct, as all the evidence offered consisted of conversations between the shippers and the master before or at the time the bill of lading was executed. Unless the bill of lading contains a special stipulation to that effect the master is not authorized to stow the goods sent on board as cargo on deck, as when he signs the bill of lading, if in common form, he contracts to convey the merchandise safely, in the usual mode of conveyance, which, in the absence of proof of a contrary usage in the particular trade, requires that the goods shall be safely stowed under deck; and when the master departs from that rule and stows them on deck, he cannot exempt either himself or the vessel from liability, in case of loss, by virtue of the exception, of dangers of the seas, unless the dangers were such as would have occasioned the loss even if the goods had been stowed as required by the contract of affreightment.† Contracts of the master, within the scope of his authority as such, bind the vessel and give the creditor a lien upon it for his security, except for repairs and supplies purchased in the home port, and the master is responsible for the safe stowage of the cargo under deck, and if he fails to fulfil that duty he is responsible for the safety of the goods, and if they are sacrificed for the common safety the goods stowed under deck do not contribute to the loss.‡ Ship-owners in a contract by a bill of lading for the transportation of merchandise take upon themselves the responsibilities of common carriers, and the master, as the agent of such owners, is bound to have the cargo safely secured under deck, unless he is authorized to carry the goods on

* Ruse v. Ins. Co., 23 N. Y. 519; Wheelton v. Hardisty, 8 Ellis & Blackburn, 296; 2 Smith's Leading Cases, 758; Angell on Carriers, 4th ed., § 229.

† The Rebecca, Ware, 210; Dodge v. Bartol, 5 Greenleaf, 286; Walcott v. Ins. Co., 4 Pickering, 429; Copper Co. v. Ins. Co., 22 Id. 108; Adams v. Ins. Co., Ib. 163.

‡ The Paragon, Ware, 329, 331; 2 Phillips on Insurance, § 704; Brooks v Insurance Co , 7 Pickering, 259.

deck by the usage of the particular trade or by the consent of the shipper, and if he would rely upon the latter he must take care to require that the consent shall be expressed in a form to be available as evidence under the general rules of law.*

Where goods are stowed under deck the carrier is bound to prove the casualty or *vis major* which occasioned the loss or deterioration of the property which he undertook to transport and deliver in good condition to the consignee, and if he fails to do so the shipper or consignee, as a general rule, is entitled to his remedy for the non-delivery of the goods. No such consequences, however, follow if the goods were stowed on deck by the consent of the shipper, as in that event neither the master nor the owner is liable for any damage done to the goods by the perils of the sea or from the necessary exposure of the property, but the burden to prove such consent is upon the carrier, and he must take care that he has competent evidence to prove the fact.† Parol evidence, said Mr. Justice Nelson, in the case of *Creery* v. *Holly*,‡ is inadmissible to vary the terms or legal import of a bill of lading free of ambiguity, and it was accordingly held in that case that a clean bill of lading imports that the goods are stowed under deck, and that parol evidence that the vendor agreed that the goods should be stowed on deck could not legally be received even in an action by the vendor against the purchaser for the price of the goods which were lost in consequence of the stowage of the goods in that manner by the carrier. Even where it appeared that the shipper, or his agent who delivered the goods to the carrier, repeatedly saw them as they were stowed in that way and made no objection to their being so stowed, the Supreme Court of Maine held that the evidence of those facts was not admissible to vary the legal import of the contract of shipment; that the bill of lading being what is called a clean bill of lading, it bound the owners of the vessel to carry the goods

---

* The Waldo, Davies, 162; Blackett v. Exchange Co , 2 Crompton & Jervis, 250; 1 Arnould on Insurance, 69; Lenox v. Insurance Co., 3 Johnson's Cases, 178.

† Shackleford v. Wilcox, 9 Louisiana, 38.　　　‡ 14 Wendell, 28.

under deck, but the court admitted that where there is a well-known usage in reference to a particular trade to carry the goods as convenience may require, either upon or under deck, the bill of lading may import no more than that the cargo shall be carried in the usual manner.* Testimony to prove a verbal agreement that the goods might be stowed on deck was offered by the defence in the case of *Barber* v. *Brace*,† but the court rejected the testimony, holding that the whole conversation, both before and at the time the writing was given, was merged in the written instrument, which undoubtedly is the correct rule upon the subject. Written instruments cannot be contradicted or varied by evidence of oral conversations between the parties which took place before or at the time the written instrument was executed; but in the case of a bill of lading or a charter-party, evidence of usage in a particular trade is admissible to show that certain goods in that trade may be stowed on deck, as was distinctly decided in that case.‡ But evidence of usage cannot be admitted to control or vary the positive stipulations of a bill of lading, or to substitute for the express terms of the instrument an implied agreement or usage that the carrier shall not be bound to keep, transport, and deliver the goods in good order and condition.§

Remarks, it must be admitted, are found in the opinion of the court, in the case of *Vernard* v. *Hudson*,‖ and also in the case of *Sayward* v. *Stevens*,¶ which favor the views of the appellant, but the weight of authority and all the analogies of the rules of evidence support the conclusion of the court below, and the court here adopts that conclusion as the correct rule of law, subject to the qualifications herein expressed.

DECREE AFFIRMED.

* Sprout *v.* Donnell, 26 Maine, 187; 2 Taylor on Evidence, §§ 1062, 1067; Hope *v.* State Bank, 4 Louisiana, 212; 1 Arnould on Insurance, 70; Lapham *v.* Insurance Co., 24 Pickering, 1.

† 3 Connecticut, 14.

‡ Barber *v.* Brace, 3 Pickering, 13; 1 Smith's Leading Cases, 6th American edition, 837.

§ The Reeside, 2 Sumner, 570; 1 Duer on Insurance, § 17.