## THE FREDA.

(District Court, S. D. New York. April 30, 1918.)

1. **Shipping ☞197—Shipper held entitled to recover general average contribution.**

   Where a time charterer issued to a shipper a clean bill of lading, which entitled him to have his cargo loaded below decks, but it was without his knowledge loaded on deck, and was jettisoned when the ship stranded, a provision of the bill of lading that general average was to be under the York-Antwerp rules, which specifically exclude jettisoned deck cargo from general average, *held* inoperative as against the charterer, and also against the shipowner, whether or not its master signed the bill of lading as required by the charter party, which also permitted the loading of deck cargo.

2. **Shipping ☞195—Libelant in suit for loss of cargo may recover general average contribution.**

   In a suit against a vessel and her time charterer for nondelivery of cargo, where recovery cannot be had on that ground, because the shipment was lost through an excepted peril of the seas, libelant may recover the amount to which he is entitled in general average, from which he was excluded through the fault of the charterer; execution first to issue against the time charterer.

In Admiralty. Suit by the C. B. Fox Company, Incorporated, against the steamship Freda, with the Caribbean & Southern Steamship

Company, Incorporated, impleaded, to recover for lost cargo. Decree for libelant.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones, of New York City, of counsel), for libelant.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for The Freda.

Kirlin, Woolsey & Hickok, of New York City (John M. Woolsey, of New York City, of counsel), for Caribbean & Southern S. S. Co.

HOUGH, Circuit Judge. [1] The Freda, being under time·charter to the Caribbean Company, was by the charterer dispatched on a voyage from New Orleans to Progresso, Mexico. The charter party gave charterer the right to put deck cargo on board; i.e., the shipowner agreed that it might be done.

Libelant shipped goods for Progresso, delivering same to charterer, and from the charterer received bills of lading, signed by its agents. Deck loading was not agreed for, nor did the bills of lading specify it. Without shipper's knowledge, and without objection from ship master, libelant's cargo was laden on deck.

Alacran Reef is a well-known danger to navigation in the path from New Orleans to Progresso. On it Mexico has long maintained a light, which, however, was extinguished without warning to navigators a few days before the Freda sailed. I find that the Freda ran on the reef because the light was out; that was the proximate cause.

By the stranding the Freda was so damaged that she never reached Progresso. All cargo on deck and much under deck was jettisoned in an endeavor to lighten ship, in order to back or warp off. This was unsuccessful, and a wrecking tug was necessary to release the steamer. Some cargo was delivered at Progresso by lighters. This libel prays for the value of jettisoned deck cargo, merely alleging shipment and nondelivery.

It appeared in evidence that after disaster the Freda's chronometers were varying from true time more than had been revealed by tests made very shortly before voyage began. If they were "out" as greatly when observation was made, not many hours before stranding, the Freda was about 18 miles off her course because of such undiscovered error. But the Caribbean is a region of difficult and varying currents, and I think it not proven or provable whether it was because of chronometrical error or currents that the steamer was approximately 18 miles nearer the extinguished light than was supposed. The evidence is not sufficiently clear to induce me to substitute chronometrical error, for the extinguished light as the proximate cause of disaster.

Be this as it may, however, I think due diligence to render the ship seaworthy is affirmatively shown, and for that reason, also, I hold the proximate cause to have been the act of Mexico in putting out the light and giving no notice. The loss of libelant's goods was not in fact due to their being deck-laden, for either jettison or damage by sea water affected all cargo, except some in the very top of the after hold. But by the bill of lading general average was to be under the York-Antwerp rules, which specifically exclude jettisoned deck.cargo from contributory benefits. There was a general average taken after the

Freda was salved, and libelant's goods excluded; the ship being the paying contributor, jettison having been for her benefit.

The average proceeding has been closed, and no provision made for libelants, and freight was payable and paid in full in advance of shipment, so that the charterer had no contributing interest.

[2] On the foregoing facts it is held that the stranding of the Freda was due to peril of the sea; therefore the libel, which relies baldly on failure to deliver goods shipped in good order, cannot strictly prevail. Under Dupont v. Vance, 19 How. 162, 15 L. Ed. 584, however, libelant may, even in this action, recover whatever the ship should contribute in general average to libelant's proven loss.

Libelant, having been excluded under the York-Antwerp rules from the average actually taken, must rely for relief on the circumstances preceding such justified exclusion. Here the original breach of contract was by charterer. Libelant received a "clean bill of lading" and therefore had a right to assume that the lading was under deck. The Delaware, 14 Wall. 579, 20 L. Ed. 779. In legal effect, it was under deck, so far as charterer was concerned. But shipowner was bound by the bills of lading issued by charterer, so far as not inconsistent with charter party; nor did the ship master object to or even examine the bills of lading as issued, though they were exhibited to him. This is not the subject of unfavorable comment, for he was bound to sign whatever charterer offered, not infringing rights reserved by charter. He would have been obliged to sign these bills of lading, even if he had been told that it was the intent to give deck cargo the position and rights of hold cargo.

Therefore I think that, against ship as well as charterer libelant's cargo is to be considered as if under deck. What libelant is entitled to is the amount he should have gotten in general average, and the final inquiry is: Who kept him out of the average actually held? Or (to put it in another way) who treated the cargo so as to create an actual condition preventing participation, and a legal condition permitting it? Clearly the charterer; the shipowner in effect only obeyed charterer's directions.

Therefore let libelant take a decree for the amount of the average contribution that should have been obtained, against ship and impleaded respondent; execution first to issue against charterer.