**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TIPOSAN HARF VE MATBAA GERECLERI
A.S.,
<u>Plaintiff-Appellant,</u>

v.

MASONITE CORPORATION,
<u>Defendant-Appellee,</u>

and

AYERS MARITIME SERVICE,

INCORPORATED,
<u>Defendant,</u>

No. 97-2082

v.

B.D.P. INTERNATIONAL,
INCORPORATED; EVANS MARITIME
SERVICES, INCORPORATED; JET
COMPANIA NAVIERA S.A.,
<u>Third Party Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-94-885-BO)

Argued: May 7, 1998

Decided: August 10, 1998

Before ERVIN and HAMILTON, Circuit Judges, and
BLAKE, United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Keith Edward Hope, KEITH E. HOPE, P.A., Tallahassee, Florida, for Appellant. David Alan Nash, HOGUE, HILL, JONES, NASH & LYNCH, L.L.P., Wilmington, North Carolina, for Appellee. **ON BRIEF:** Robert B. White, Jr., SOBERING, WHITE & LUCZAK, P.A., Orlando, Florida, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Plaintiff-appellant Tiposan Harf ve Matbaa Gerecleri ("Tiposan") appeals the district court's grant of summary judgment to defendant-appellee Masonite Corporation on its breach of contract claims. Finding no error, we affirm.

I.

Tiposan, a Turkish company, contracted with Masonite to purchase a quantity of medium density fiberboard ("MDF") manufactured by Masonite in North Carolina. The terms of the sale were "CF Istanbul." "CF" (also called "C&F") means that the price includes cost and freight. See N.C. Gen. Stat. § 25-2-320 (1995). Under this type of contract, the risk of subsequent loss or damage to the goods passes to the buyer upon delivery to the carrier, as long as the seller has properly performed all its obligations with respect to the goods. See id. cmt. 1.

2

The carrier selected to transport the fiberboard was Jet Compania Naviera ("Jet"). Tiposan claims, and for summary judgment purposes we accept its contention as true, that Masonite's product manager, Mike Hopkins, booked the shipment himself rather than going through Masonite's usual freight broker, B.D.P. International Inc., or having Tiposan book it.

Masonite delivered the MDF to the carrier, Jet, and was issued a clean bill of lading. According to industry practice, such a "clean" bill of lading indicates that the goods to be shipped were stored "on board" (i.e. below deck) and not "on deck." See, e.g., Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 303-04 (2d Cir. 1987) ("It has long been recognized in admiralty custom and practice that a "clean" bill of lading refers also to the place on a ship where cargo is to be stowed. `[A] clean bill of lading imports that the goods are to be safely and properly stowed under deck.'" (quoting The Delaware, 81 U.S. (14 Wall.) 579, 602 (1871)) (footnote omitted)). Nonetheless, because of overbooking Jet stored a portion of the MDF on the deck of the ship and, as a result, this portion sustained water damage as it was being shipped from the port in Wilmington, North Carolina to Istanbul, Turkey. Both parties agree that the MDF should have been stowed below deck in order to avoid water damage. Jet, the entity responsible for stowing the MDF below deck, is in bankruptcy.

Tiposan brought suit against Masonite alleging Masonite was negligent and in breach of the sales agreement by failing to make reasonable and adequate shipping arrangements, and negligent and in breach of the terms of the letter of credit by allowing a clean bill of lading to be issued by Jet at the time the MDF was loaded onto the ship in Wilmington. Masonite responded by filing a motion for summary judgment against Tiposan.

The district court granted Masonite's summary judgment motion, noting in its order that under the terms of the CF contract, once Masonite had "(1) put the MDF into the possession of the carrier at the port for shipment and procured a reasonable contract of carriage for the MDF, (2) received a clean bill of lading, and (3) forwarded and tendered an invoice for the goods and the bill of lad[ing] to Tiposan and notified Tiposan of the shipment, Masonite[had] fully and satisfactorily performed its duties under the contract with Tiposan."

3

J.A. at 106. The district court went on to observe that "[t]here [was] no indication from the contract or the statutes which govern[ed] the contract that Masonite should be held accountable for the fact that the MDF was stowed on deck and was damages [sic] as a result thereof." Id. (citation omitted). Therefore, because there was "no question as to what Masonite's duties were" and "no question that Masonite fulfilled those duties," Tiposan had failed to establish a genuine issue of material fact as required to survive summary judgment. Id.

II.

After reviewing the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that the district court's order of summary judgment for Masonite was correct. Accordingly, we affirm on the reasoning of the district court.

AFFIRMED

4