## MANN AND WHEELER v. BIRCHARD AND PAGE.

*Railroad. Common Carrier. Burden of Proof. Ordinary Care. Negligence. Notice. Contract. Evidence. Deposition. Massachusetts Statute. Variance.*

A railway company cannot by their printed notices, receipts and regulations, even when brought to the notice of the shipper, so limit the responsibility that they can carry freights for a reward, and, at the same time, not be liable for a failure to exercise ordinary care in the business.

The station agent at Ludlow, on the defendants' railroad, billed the plaintiffs' goods through to Charlestown, Mass., a point upon a connecting road, and receipted the pay for " transporting the merchandise from Ludlow to Charlestown," and this was shown to be in accordance with the usual course of business upon the defendants' road. *Held,* that these facts, without further proof constituted proper and sufficient evidence to warrant the court in submitting to the jury the question whether or not the defendants undertook to transport the goods over the connecting roads to the point of their ultimate destination.

The burden is upon the plaintiffs to prove that the defendants failed to exercise ordinary care and diligence in carrying the goods, but unusual and unexplained delay and failure to deliver the goods according to the general course of business, is *prima facie* evidence of a want of ordinary care.

In the caption of a deposition the name of one defendant was erroneously written Edward instead of Edwin. The name of the other defendant was written accurately, and both are properly described as the trustees of a certain railway, in which capacity they defend the suit and appeared at the taking of the deposition, *Held,* that the deposition was admissible.

A Massachusetts statute, for sanitary purposes, prohibits the sale of veal killed when less than four weeks old. The plaintiffs, residents of Vermont, were not shown to have knowledge of this statute. *Held,* that the fact, if proved, that some of the veals which were sent by the defendants' railway to Massachusetts to be sold were within the provisions of this statute, would not be available to the defendants as a defence to an action for a want of care in transporting the goods, and the statute was only to be considered so far as it might affect the value of the veal. ·

The declaration alleges a special contract for unusual despatch in transporting the merchandise. The evidence did not tend to prove that there was any agreement for unusual despatch. *Held,* that the variance is fatal, whether the action is in case *ex contractu* or *ex delicto.*

ASSUMPSIT to recover damages of the defendants as common carriers for neglecting to transport certain property of the plaintiffs to its place of destination within a reasonable time. Plea, the general issue, and trial by jury at the December Term, Addison county, 1866, PIERPOINT, Ch. J., presiding.

In the first count of the declaration it is alleged that the defendants, " in consideration, &c., contracted and undertook to forward veals by *express and through freight trains* to Charlestown, Mass., which, in the course of business, would have arrived at said Charlestown the next morning after the delivery, and that it was not transported *in or upon their express and through freight trains.*"

. It is alleged in the second count that the defendants, " in consideration, &c., undertook and promised to transport, &c., by their, the defendants' *express freight trains*, &c., and to deliver the said freight in due course by the *first through and express freight trains*, and thus, said freight would have arrived at said Charlestown on the 8th day of April, 1865 ; yet the said defendants, &c., did not put said freight on their *first express or through freight trains*, &c., but put the same aboard of *way freight trains*, &c."

In the third count it is alleged that the defendants, " in consideration, &c., *then and there paid* by said plaintiffs to the defendants, undertook to transport said freight with all reasonable and proper dispatch, and by the *earliest* and *quickest freight trains*," &c., but did not send the same by the *earliest* and *fastest* and *most regular* freight trains, &c.

The plaintiffs gave evidence tending to prove that they jointly

purchased and owned eighty-two calves and twenty-one sheep; that the plaintiff, Mann, went to Ludlow and arranged with Herrick and Maitland Woodward, butchers, to receive the animals at the Ludlow station, on the Rutland & Burlington Railroad, slaughter and dress them, and return them to the same station to be forwarded to Charlestown for the Boston market.

That Mann then went to the defendants' agent, in charge of the Ludlow station, and informed him that he was about to send the animals to Ludlow by railroad; that the Woodwards were to receive, slaughter and return them, and that he wished them sent by railroad to Charlestown.

That on the 3d day of April, 1865, the plaintiffs sent the animals to Ludlow, where they were received by said Woodwards, slaughtered and dressed. That forty of the veals, properly dressed, wrapped in their skins, and in good order, were returned by the Woodwards to the Ludlow station on the 5th of April, in time for the freight train south, of that day, and were received by the defendant's agent with instructions to forward them to John Dupee, at Charlestown. That the remining forty-two of the calves, dressed in the same manner, and the twenty-one sheep, also properly dressed and sewn in cloths, and all in good order, were delivered by said Woodwards at the Ludlow station on the 6th day of April, and in time for the freight train of that day, and were received by said agent with the same instructions.

That the first lot of veals arrived in Charlestown, having been forwarded by said agent over the defendants' road, on the 8th of April; and the second lot of veals and muttons so forwarded arrived in Charlestown on the 11th day of April. That all the carcasses and skins of the veals were found on their arrival to be tainted, and greatly injured, owing to the lapse of time since they had been killed. That they were taken by the said Dupee (who had been employed by the plaintiffs to sell them,) immediately on their arrival at Charlestown. That disposition of them was made to the best advantage, and all realized that could be, but that, in consequence of said injury, a considerable loss was sustained, the amount and particulars of which were stated by witnesses.

Mann et al. *v.* Birchard et al.

It further appeared, and without dispute, that the defendants were, at that time, trustees of the second mortgage of the Rutland & Burlington Railroad, and were in possession of and operating said road.

That said road forms, by connection with the Cheshire Railroad, commencing at Bellows Falls, and the Fitchburg Railroad, commencing at Fitchburg, a continuous line of railroad to Charlestown and Boston.

That it was the usual course of business to receive freight at all points on the defendants' road to bill it through to Boston and Charlestown, either collecting freight in advance for the whole line, or collecting at Boston for the whole line, and giving receipts accordingly. The defendants run three freight trains per day over their road, and a cattle train on Mondays, two of the freight trains and the cattle train going through to Boston without change of cars, the other being designated as the " way freight train," which collected the freight at way stations, including Ludlow.

That freight of the description in question was received as first class freight, and was required to be prepaid through, on account of its perishable character. That the plaintiffs' freight, on this occasion, was, by the defendants' agent, entered on the books and billed as prepaid through, and a receipt was given for the amount prepaid.

It further appeared that the regular time of the freight train that passed Ludlow, as above mentioned, to arrive in Boston, would be according to the time table the next morning. That the cattle train did really so arrive, the distance being about          miles. That it might go through within twenty-four hours, when there were no delays, and did so when special contracts for dispatch were made. But that in the ordinary course of business two days were generally occupied, in consequence of freight arriving at Bellows Falls faster than it left, and waiting its turn there, and such other delays as are unavoidable in operating a railroad.

It did not appear where or how the delay occurred in the present instance.

The plaintiff offered the deposition of Henry Adams, which was objected to for error in the given name of the defendant, Birchard, the same being written Edward instead of Edwin.

The defendants introduced evidence tending to show that no notice

22

was given beforehand, as testified on the part of the plaintiffs, to the agent of the defendants, that the animals were to be slaughtered and returned by said Woodwards for the purpose of being forwarded to Charlestown. And that no interview took place between the plaintiff and the agent on the subject. That said agent did not know that the property belonged to the plaintiffs till some time after the transaction, but supposed it to be the property of the Woodwards, who had been accustomed to send such freight.

They further introduced evidence tending to show that the first lot of veals were delivered at Ludlow station on the 6th day of April, and the second lot on the 7th day of April. That the first lot left on the 6th and the second lot on the 7th. They also introduced in evidence certain printed freight tariffs, with the rules and regulations thereto appended.

Among the regulations were the following:

" 9. The trustees will not hold themselves liable for the safe " carriage or custody of any article of freight unless duly receipted " for by an authorized agent, and no agent of the trustees is author- " ized to receive or agree to transport any freight which is not thus " receipted for."

" 12. The trustees will not hold themselves liable for injuries to " any articles of freight during the course of transportation, arising " from the weather or accidental delays. Nor will they guarantee " any speecial dispatch in the transportation of such articles, unless " made the subject of an express stipulation, and an additional price " paid."

They also introduced evidence tending to show that said Woodwards were acquainted with these regulations, from having previously done business of that sort of their own with the defendants.

They also inquired of said Mann, one of the plaintiffs, upon cross-examination, if he was acquainted with the rules and regulations of the road, to which question he replied that he was. But said Mann further testified that he did not know prior to the transaction in question of the rules nine and twelve, above quoted. And that he never before sent any freight of a similar or perishable character over the road.

They also introduced in evidence a blank form of a receipt with a condition thereon that the defendants would not take any risk of damage caused by delay of trains, accidental or otherwise, to perishable property, such as fruits, fresh meats, &c., unless by special contract signed by the superintendent, in which case an extra price would be asked of not less than double the tariff rates. And gave evidence by their said agent at Ludlow station that he had been instructed by the defendants to require prepayment of freight in all cases upon slaughtered animals and fresh meats, and also give the consignor a receipt of the form introduced, and to call his attention to said condition.

The defendants then proposed to prove by said agent that prior to the 5th of April, 1866, it had been agreed between said agent and said Woodwards, in reference to the business of said Woodwards, that in consideration that said agent would waive the prepayment required by the regulations aforesaid on fresh meat forwarded by said Woodwards, they would thereafter treat said notice as given in all cases, the same as if they had prepaid the freight and received a receipt of the form aforesaid.

To the admission of this evidence the plaintiffs objected, and it was excluded by the court.

The defendants claimed and introduced evidence tending to show that some of the said calves were less than four weeks old.

They also introduced in evidence section 2 of chapter 166 of the General Statutes of Massachusetts, in force at the time of the transaction in question, as follows :

" Whoever kills, or causes to be killed, for the purpose of sale, any " calf less than four weeks old, or knowingly sells, or has in his " possession with intent to sell the meat of any calf killed when less " than four weeks old, shall be punished by fine not exceeding two " hundred dollars."

It appeared that said calves were sent to Boston by the plaintiffs for sale. But no evidence was introduced to show that either of the plaintiffs had any knowledge of the aforesaid statute, or had ever resided in the state of Massachusetts.

The defendants requested the court to charge the jury as follows :

The rule or regulation of the defendants, that fresh meat or slaughtered animals would be transported only at the risk of the owner is perfectly reasonable, and one which the defendants are competent to make, and notice thereof to the plaintiffs, their agent, or the person delivering the freight in their charge, if assented to, or not expressly dissented from, would operate to discharge the defendants from liability for injury resulting from accidental delay or natural causes, occurring in the usual course of business ; and the burden of proof would rest with the plaintiffs to show *actual* negligence in the transportation of the freight, and that the loss, if any, resulted therefrom.

The evidence shows that the road of the defendants terminates at Bellows Falls, and no proof has been submitted of a joint running arrangement between the defendants' road and lower connecting roads, and upon the facts in evidence : the reception of the property by the defendants, the freight paid through to Boston, the way-bills, the receipts executed to the defendants and the direction given to it are insufficient to prove an agreement on the part of the defendants, as common carriers, to transport the freight to its destination.

The declaration bases the plaintiffs' right of recovery upon special contract with reference to the veals and muttons, as set forth in the several counts thereof.    The evidence has no tendency to prove such special contract ; nor are the plaintiffs entitled to recover against the defendants as common carriers upon any implied contract or liability, having declared upon special contract.

If the jury find that the plaintiffs could not lawfully sell all or any portion of the veals at their destination, under the laws of Massachusetts, the defendants are not liable for any injury such property may have sustained.

Such portion of the veals as the jury find were less than four weeks old, were worth nothing in Boston, and are to be excluded in estimating the damages.

The court charged in substance as follows :

That, as the defendants' road terminated at Bellows Falls, they were not liable for any delay in the transmission of the property that accrued beyond that point, unless they contracted to carry the freight through to Boston.

And the jury were first to inquire whether the plaintiffs have made out such an undertaking on the part of the defendants. In view of all the evidence, what was the understanding of the parties.

That, in determining this point, the jury were to regard the ordinary course of business as shown, what they may find to have been said when the freight was delivered, the entries, way-bills and receipts introduced, the required prepayment of the freight, and all the circumstances of the transaction so far as proved.

If no such undertaking is made out, the plaintiffs cannot recover.

That in transporting the property the defendants were bound to use reasonable diligence. And whether due and reasonable diligence was used, is a question for the jury.

That what amounted to reasonable diligence was to be determined in view of all the circumstances of the case. The jury should take into account the distance, the different connecting lines, the facilities that existed for doing the business, the ordinary and usual mode and course of business, the inevitable delays that will accompany the transmission of property, and the evidence given by the defendants as to their arrangements, and as to the average time required.

That the defendants were bound to send forward the property as fast as it reasonably could be done, in their ordinary mode of business, regulated by reasonable rules, and in view of all the circumstances of the case, and no faster.

That it would not be reasonable to require that property should go through within the time allowed by the time table, as that assumes that no accident or delay will occur.

And that in considering what would be due diligence, the character of the property, as perishable, might be regarded; or it might be reasonable to require, other things being equal, that perishable property should have precedence, if all could not go through at the same time.

That a special contract might have been made with the defendants for special dispatch, and if made would have been binding. But no such contract having been made, the defendants were not bound to special or unusual dispatch. Although they had it in their power to send the property through with such special dispatch, they were

not bound to do so, in the absence of such a contract, but were only bound to ordinary and reasonable diligence.

That the rule as to the effect of the notices claimed by the defendants, is that by such notices they cannot absolve themselves from any neglect of their own. If they receive property, and undertake to send it forward, they are bound to use reasonable dispatch, and if guilty of negligence in that respect, cannot protect themselves by such a notice.

But in the absence of any special contract the plaintiffs were bound to understand that the property was only to go forward in the ordinary way, and in the regular course of business, and no faster.

That if the jury find, under the instructions of the court, that the defendants had been guilty of negligence in forwarding the property, the plaintiffs were entitled to recover the loss they had sustained thereby.

That the freight not being actually prepaid, under the circumstances stated, did not constitute a defense.

And that the defense set up under the law of Massachusetts was not available, though the facts might affect the question of damages, as far as they went to diminish the actual value of the property, or to render it unsaleable.

To the admission of the plaintiffs' evidence objected to, and the exclusion of the defendants' evidence, as above stated, to the refusal of the court to charge as requested, so far as the court did so refuse, and to the charge on the points of the requests, so far as it varied from the requests, the defendants excepted.

Verdict for the plaintiffs.

*E. J. Phelps*, for the plaintiffs.

I.  Two propositions of law in regard to notices by carriers to abridge their responsibility, are established beyond all dispute.

1.  That no such notice can ever discharge the carrier from liability for his own negligence. 2 Redf. on Railroads, (last ed.) pp. 84 to 87 and 92 to 94, and cases cited; *Moses* v. *B. & H. R. R.*, 4 Foster, 71; *Sage* v. *P. S. H. R. R.*, 31 Me. 228.

2.  That no notice whatever is effectual, unless shown to have been

made known to the party sought to be affected. 2 Redf. (last ed.) pp. 77 to 78, and cases cited.

II. The charge of the court was in all respects correct, and was fully as favorable to the defendants as the case warranted.

1. The evidence to show the undertaking of the defendants to carry the freight through to Boston, was ample, and was properly submitted to the jury. 2 Redf. on Railroads, pp. 99 to 112; *Ib.* 161.

2. The defense set up under the statute of Massachusetts was correctly overruled.

(*a.*) The essence of such a defense is *an intent* to violate the law, which, in this case, did not exist.

The plaintiffs were not citizens of Massachusetts, and never had heard of any such statute.

(*b.*) Even if the intent were made out, the defendants could not protect themselves against liability for negligence on that ground.

*W. C. Dunton,* for the defendants.

I. The names of the parties to the suit must be stated in full and correctly in the caption of a deposition. *Swift* v. *Cobb et al.,* 10 Vt. 282; *Haskins* v. *Smith,* 17 Vt. 265.

II. The testimony of the defendants' station agent at Ludlow was improperly excluded.

1. The notice or condition on the receipt, if not objected to, is really a part of the contract, and the party accepting it without objection, *elects* to take the risk of delays, rather than to throw it upon the carrier by contracting for dispatch at a higher rate. *Wells* v. *N. Y. Central R. R. Co.,* 24 N. Y., 181; *Kimball* v. *Rut. & Bur. R. R. Co.,* 26 Vt. 247; *Chippendale* v. *L. & Y. R. R. Co.,* 7 E. L. & Eq. 395; *Wyld* v. *Pickford,* 8 Exch. 442; *Moore* v. *Evans,* 14 Barbour, 524; *Harris* v. *Packwood,* 3 Taunt. 265; *Dorr* v. *N. J. Steam Nav. Co.,* 11 N. Y. 485; 25 N. Y. 442; 10 E. L. & Eq. 366; *Lee* v. *Marsh,* 43 Barb.

It is now well settled by the above cases that carriers can limit their liability by contract.

2. The Woodwards were the agents of the plaintiffs to see that this property was forwarded to Charlestown, and any contract made

by them as to forwarding the same with the agent of the defendants was binding upon the plaintiffs. Story on Bailment, p. 561, § 588; Angell on Carriers, p. 233; Redf. on Railways, vol. 2, p. 84.

3. They could certainly agree to treat the transaction the same as though the receipt had been given, and their attention called to the notice or condition thereon, and it would have the same effect as though all this had been done according to the rules of the defendants, and would bind the plaintiffs.

III.  1. Rule 12th of the defendants, disclaiming liability for injuries to freight arising from the weather, unless made the subject of *express* stipulation, and an additional price is paid, is a reasonable rule.  2 Redf. on Railways, 86, 96; Angell on Carriers, p. 205.

(*a.*) The course of business is such, and delays are so frequent, on railroads it would be ruinous for them to undertake to carry perishable articles, like fresh meats, upon any other terms.

(*b.*) By the terms of said rule, parties transporting perishable property have their election either to take the risk of delays upon themselves, or pay a higher rate and throw it upon the carriers.

2.  If the jury found, as the evidence tended to prove, that the plaintiffs, or their agents, or both, had knowledge of rule 12th, then the burden of proof would be upon the plaintiffs to show that the delay was caused by the *actual negligence* of the defendants or their agents.  Story on Bailment, 577, 466, note; Angell on Carriers, pp. 58, 254; *Moore* v. *Evans*, 14 Barbour, 524; *Wyld* v. *Pickford*, 8 M. & W. 443; Redf. on Railways, vol. 2, p. 88; *Harris* v. *Packwood*, 3 Taunt. 271.

IV.  There was no proof of an agreement on the part of the defendants, as common carriers, to transport the freight to Boston, and it was error to submit this question to the jury.  2 Redf. on Railways, p. 52.

In the absence of all proof of a joint running arrangement between the defendants' road, the Cheshire & Fitchburg roads, the receipts, way-bills, payment of freight and direction, were not sufficient to prove a contract to carry the property beyond the *terminus* of the defendants' road.  *Nutting* v. *Conn. Riv. R. R.*, 1 Gray, 502; *Elmore* v. *Naugatuck R. R.*, 23 Conn. 457; *Naugatuck R. R. Co.*, v. *Waterbury B. Co.*, 24 Conn. 477.

V. Carriers can contract against liability even for negligence. *Chippendale* v. *The Lancashire & Yorkshire R. R. Co.*, 7 E. L. & Eq. 395 ; *Ill. Cen. R. R.* v. *Morison*, 19 Ill. 136 ; *Lee et al.* v. *Marsh*, 43 Barb. (4 A. L. Reg. 445) ; *Wells* v. *N. Y. Cen. R. R.*, 26 Barb. 641.

The election on the part of the Woodwards to have this property carried at the low rate, after having received the notices, amounted to a special contract whereby the plaintiffs assumed the risk of delays. 1 Redf. on Railways, 77, 78, 79 and notes ; *Ib.* 80, § 11 ; *Kimball* v. *R. & B. R. R.*, *supra*.

VI. The declaration is upon a special contract to carry the veals and muttons to their destination, as will be seen by reference to the several counts thereof. Chitty on Pl. vol. 2, p. 356.

The opinion of the court was delivered by

Steele, J. 1. The county court ruled that the defendants, under the circumstances of this case, were to be held to the exercise of only ordinary care and diligence. It is well settled that the printed notices, receipts and regulations of a railway company, even when brought to the notice of the shipper, will have no more effect than the court by this ruling gave them. The defendants could not carry freights upon their railway for a reward without being liable for a failure to use ordinary care in carrying them. No exception by the defendants can, therefore, prevail upon this branch of the case, whether taken to the ruling the court made upon the subject, or to the exclusion of testimony, whose only tendency, if admissible, would have been to prove the defendants entitled to that ruling.

2. The receipts, way-bills and books, together with the testimony of the manner and course of the defendants' business, constituted, in our judgment, proper and sufficient evidence to warrant the court in submitting to the jury the question whether or not the defendants undertook to transport the goods over the connecting roads to the point of their ultimate destination.

3. The burden was upon the plaintiffs to prove that the defendants failed to exercise ordinary care. In other words, it was for the plaintiffs not only to establish the contract or duty, but also the breach of it, in order to entitle them to a recovery. The court did not so tell

the jury in express terms, but such was the unmistakable effect of the charge. It is, however, suggested that there was no evidence of negligence, and that the ruling asked for, if properly applied to the evidence, would have required the court to tell the jury, first, that the burden was upon the plaintiffs to prove negligence, and, secondly, that the plaintiffs had failed to make that proof. It appeared that the freight was unusually delayed. The defendants did not attempt to excuse or explain the delay. Their facilities for tracing the history of their own trains would probably be complete while the plaintiffs, if they sought information on the subject, would be mainly dependent on the defendants and their subordinates. This unusual and unexplained delay and failure to deliver the property according to the general course of business raises a natural presumption of negligence, and is sufficient *prima facie* evidence of a want of ordinary care. It was by no means incumbent upon the plaintiffs to prove that there was *not* some unavoidable accident, or other unforseen occurrence, which would relieve the defendants from this natural presumption. To require the plaintiffs, in making a *prima facie* case, to assume the burden of negating the occurrence of matters which, if they did occur, were out of the usual course of events, and particularly within the defendants' knowledge, would be an extraordinary perversion of the natuaral and ordinary rules of evidence. See *Day* v. *Ridley*, 16 Vt. 48 ; *Brintnall* v. *S. & W. R. R. Co.*, 32 Vt. 665.

4. In the caption of the deposition of Adams the christian name of one of the defendants is erroneously written Edward instead of Edwin. The name of the other defendant is written accurately, and both are described correctly as the trustees of the second mortgage bondholders of the Rutland & Burlington railroad, in which capacity they defend the suit, and appeared at the taking of the deposition. The names Edward and Edwin are so nearly *idem sonans*, that in view of the accurate naming of the other defendant, and description of both, we have no hesitation in holding that the defendants are set up in the caption with such substantial and unmistakable certainty as to constitute a sufficient compliance with the statute, and to warrant the court in receiving the deposition.

5. The court correctly disposed of the point made upon the Massachusetts statute relative to the sale of veal killed when less than four weeks old. There is no presumption that the parties, residents of Vermont, knew of this statute, or were guilty of any corrupt intent to violate it. The statute is, at best, but a local sanitary regulation, beyond whose jurisdiction the plaintiffs, when they learned of its existence, could, in a few hours, have shipped the veal, if, in fact, any of it was so killed as to come within its provisions.

6. The declaration in each count sets up a special contract for unusual despatch, alleging in one count that the defendants promised to transport the freight " by express and through freight trains ;" in another, " by the first through and express freight trains ;" and in the third, " by the earliest and quickest freight trains." The plaintiffs' evidence, so far from tending to prove such a contract, proves that it was understood that the freight was not to be so carried. There is, then, a manifest variance between the declaration and the proof. The declaration *seems* to be in assumpsit, and the first count somewhat singularly reads, " in a plea of assumpsit," but even if the declaration is in case, *ex delicto*, the variance would be equally fatal. In the early and familiar cases of *Wright* v. *Geer*, 6 Vt. 151, and *Vail* v. *Strong*, 10 Vt. 457, the authorities are collated, and it is held, as the result of them all, to use the language of PHELPS, J., " that whether the action is in form *ex contractu*, or *ex delicto*, if the cause of action, *as set forth*, originates in a contract, the contract must be proved as laid." The point was distinctly made in the ninth request that the evidence had no tendency to prove such a special contract as was alleged, and although the request did not specify the variance, as it should have done, still as the court accepted it without requiring it to be more specific, we see no way to avoid reversing the judgment.

The question with relation to the right under this declaration to recover for the injury to the skins, and some other points raised in argument, are not referred to, because in a future trial upon a new declaration they will not be likely to be of any practical importance.

The judgment is reversed, and cause remanded.