Symonds, J., did not sit.

---

Jacob G. Witzler *vs.* Jason Collins & others.

Kennebec.    Opinion October 29, 1879.

*Deposition. Rule 28 Superior Court Kennebec. Common carrier. Contract. Bill of lading. Delivery. Receipt. Evidence. Error.*

Under Rule 28 of the superior court Kennebec county, a deposition, not filed with the clerk at the term for which it was taken, is not admissible in evidence.

Under a contract by a common carrier for the carriage of goods by water, evidenced by a bill of lading in the usual form signed by the proper agent

in the ordinary course of business, the owners of the vessel are responsible only for such goods as are embraced in the bill of lading and delivered on board the vessel, or into the actual custody of the master, or such as were so delivered as and for those embraced in the bill before the vessel sails.

It is not competent by evidence *aliunde* to show that such a bill of lading was intended to or did embrace goods elsewhere so as to make the owners responsible therefor.

Ordinarily the master has no authority to bind the owners by giving a receipt for goods at any other than the accustomed place of delivery.

There can be no constructive delivery of goods so as to bind the owners for their carriage except at such place, as where by constant practice and usage they have received property left for transportation.

It is error in a court to charge a jury upon a supposed or conjectural state of facts, of which no evidence has been offered.

A bill of lading is an instrument of a two-fold character. It is a receipt as to the quantity and quality of the goods to be carried and a contract as to their carriage.

As a receipt it is open to explanation or contradiction the same as other receipts. Its acknowledgment of the apparent condition of the goods, though strong proof of its truth, is no exception to the rule. An admission of that which is not true is not binding except when an estoppel. In this case the admission is not an estoppel because there has been no assignment of the bill of lading, nor has the plaintiff acquired any new rights or changed his position in consequence of it.

ON EXCEPTIONS to the rulings of the superior court, for the county of Kennebec, and motion to set aside the verdict.

ASSUMPSIT against defendants, as owners of the steamer "Star of the East," and as common carriers by water from Boston to Hallowell, for loss and damage of 19 packages of household goods delivered to them for carriage December 9, 1873.

Date of writ February 6, 1877, returnable to the March term 1877. Plea, the general issue.

The material facts, and likewise those portions of the judge's charge excepted to, are sufficiently stated in the opinion. The verdict was for the plaintiff in sum of $312.00. The defendant alleged exceptions and also moved to set aside the verdict.

*O. D. Baker,* (J. Baker with him) for the plaintiff, contended :

1. Rule 28 superior court, Kennebec county, is confined to that court, is under its discretion, so far as its enforcement is concerned, and that discretion is not reversible by this court.

Counsel strenuously contended that the deposition was properly

admitted, citing stat. 1878, c. 10, § 10, and, in an elaborate argument against the defendants' exceptions, cited *Gowdy* v. *Lyon*, 9 B. Mon. (Ky.) 112. *Keith* v. *Amende*, 1 Bush. (Ky.) 455. *Nelson* v. *Woodruff*, 1 Black. 156, 3 Blatch. 521. *Clarke* v. *Barnwell*, 12 How. 272. The Martha, Ole. Adm. 140. *Warden* v. *Grier*, 6 Watts, 424. *West* v. *Steamboat Berlin*, 3 Iowa, 532. *Benjamin* v. *Sinclair*, 1 Bailey, (S. C.) 174. 1 Greenl. Ev. § 305 and note 2. *Hastings* v. *Pepper*, 11 Pick. 41, 43. *Barrett* v. *Rogers*, 7 Mass. 297. *Shepard* v. *Naylor*, 5 Gray, 592. 2 Redf. Rail. §§ 156-174, par. 6, 7. *Bochm* v. *Combe*, 2 B. & S. 172. *Merritt* v. *O. C. & N. R. R.* 11 Allen, 80, 83. Redf. Car. §§ 100, 101. *Spring* v. *Haskell*, 4 Allen, 112. *Cushing* v. *Wells*, 98 Mass. 550. Sedg. Dam. 357, note 1.

*L. Clay*, for the defendants.

DANFORTH, J. The first exception in this case arises from the admission of the deposition of James L. Wilson, it having been objected to "on the ground that it was not filed at the term for which it was taken." From the caption it appears to have been taken for the June term and from the memorandum of the clerk thereon it was filed at the following September term, at which time the case was tried.

The R. S., c. 107, § 16, provides that depositions when not delivered to the court by the justice taking it, shall be "inclosed and sealed up by him and directed to such court . . and kept sealed till opened by their order," without any specification of time when this shall be done.

The rule of the superior court where this case is pending is as follows : "All depositions shall be opened and filed with the clerk, at the term for which they are taken ; and if the action in which they are taken to be used shall be continued, such deposition shall remain on the files, and be open to all objections when offered on the trial, as at the term at which they were opened ; and if not so left on the files, they shall not be used by the party who originally produced them, without the permission of the court, but the party producing a deposition may, if he sees fit, withdraw it, during the same term in which it was originally filed, in which case it shall not be used by either party." This language is so

clear and explicit as to leave no room for construction, no doubt whatever as to its meaning. The clause without permission of the court refers only to such depositions as have been filed, and by no possible construction can it be made to refer to such as have not been filed. The first clause is supplementary to the provisions of the statute, making that definite and certain which before was left indefinite and uncertain. The statute requires the deposition to be filed without fixing the time, the rule states the time when it shall be done. There is in the rule no provision whatever as to depositions not filed as there is no occasion for any, for, until that is done they are the property of the party taking them, and the court can have no control over them. *Webster* v. *Calden,* 55 Maine, 172. It is certain then that the ruling in question cannot be sustained on the ground that it was within the discretion of the court, nor does it appear from the case that it was so understood by the presiding justice.

Nor is the claim that the enforcement of a rule made by the court is within its discretion, any more tenable. It may be that a rule adopted solely for the purpose of regulating the proceedings of the court, to render them more simple, methodical and uniform, and when the rights of the parties are not involved, may as in *United States* v *Breitling,* 20 Howard, 252, be suspended or modified in their operation, when in the judgment of the court, convenience or justice may require it ; or perhaps as in *Law* v. *Law,* 4 Maine, 167, in certain cases a noncompliance may be excused when caused by accident or mistake, and no injustice can result to the opposing party. But in this case the rule is not for the guidance of the court alone, but regulates as well the proceedings and involves the interests of opposing parties, and there is no suggestion of accident or mistake as the cause of a neglect of its requirements.

Nor in such case can the court waive any of its provisions. That can be done only by the party for whose benefit it was made. *Winnisimmet Co.* v. *Chelsea,* 6 Cush. 483. The result is that the superior court, with sufficient authority therefor having made the rule, is bound by its provisions so long as it remains in force precisely as if it had been a statute. *Maberry* v. *Morse,* 43

Maine, 176; *Thompson* v. *Hatch*, 3 Pick. 512; *Tripp* v. *Brownell*, 2 Gray, 402.

Nor is the superior court the final and conclusive judge of the construction and legal effect of its own rules. *Rathbone* v. *Rathbone*, 4 Pick. 92.

It is further contended that even under this construction of the rule the first clause is merely directory and not mandatory. It is true that this clause is not qualified by any words forbidding the use of depositions not filed as required, but it is also true that negative words are not the only test of a mandatory law. This question is fully discussed in *State* v. *Smith*, 67 Maine, 328, and *Boothbay* v. *Race*, 68 Maine, 351, and many of the cases are there collected and commented upon. In the former case page 333, it is laid down as a test of the mandatory character of the law when, "from the character of the act to be performed, the manner of its performance, or its effect upon public interests or private rights, it must be presumed that the legislature had in contemplation that the act had better not be performed at all than be performed at any other time than that named." In the latter case on page 354 the test laid down by Dwarris is quoted with approbation, thus, "Negative words will make a statute imperative; and it is apprehended affirmative may if they are absolute, explicit and peremptory, and show that no direction is intended to be given; and especially where jurisdiction is conferred;" and further where the clause relates to circumstances which affect the essence of the thing to be done it is imperative. This last is fully sanctioned by Lord Mansfield in *Rex* v. *Loxdale*, 1 Burr. 447.

The clause in question clearly comes within each and all of these tests. The words used are absolute, explicit and peremptory. It commands an act to be done at a specified time by one party, which involves the interests and is intended for the protection of the rights of the other party; and which fails of affording that protection if permitted at a later period. Time is not only of the essence of the act, but so far as the rule goes, is the act itself. The statute provides for the thing to be done, the rule specifies only the time when it shall be done, and if not then done it never can be without rendering the rule of no effect.

But what is more conclusive is the fact that it is only by force of the statute and the rules of court, that depositions can ever be used, instead of requiring the personal attendance of witnesses. If there is any omission of the requirements of the law in taking, if the caption is in any respect faulty, it is rejected without question. Just as important and necessary is it that such provisions as are made to bring it within the jurisdiction and control of the court should also be complied with. Until that is done, it has not those prerequisites required by law to make it evidence, and each one is necessarily a condition precedent to its use. In *Maine Stage Co.* v. *Longley*, 14 Maine, 447, Shepley, J., says, "It would seem to be the duty of the party proposing to use a deposition to show a compliance with the law and the rules of the court to entitle him to the use of it." The same doctrine is found in *Harris* v. *Brown*, 63 Maine, 51, and *Folan* v. *Larg*, 65 id. 11.

2. The defendant's counsel seasonably objected to the admission of testimony respecting damage, or loss of goods shipped, or delivered to the defendants at any other time than September 9, 1873, the time alleged in the writ, but it was admitted by the court.

The declaration in the writ contains two counts; but it is conceded that both are founded upon one and the same contract made on the ninth day of September, 1873, by which as is alleged "the defendants, as common carriers by water, in consideration that the plaintiff would and did then deliver to them nineteen packages of household goods . . undertook and promised to carry said goods safely and securely from said Boston to said Hallowell." As there is but one contract declared upon and that for the goods delivered on the specified day, it is evident that the defendants would not be liable for the loss of goods delivered at any other time, for such would be the subject of another and independent contract.

The case further shows that the plaintiff being about to remove from the city of New York to Hallowell packed up his household effects and started them by steamer and railroad to Boston. On their arrival in Boston he then employed a truckman to take them from the depot to the defendant's boat. On the ninth of Septem-

ber the truckman took what .he supposed to be all the goods of the plaintiff and on delivering them at the boat took therefor the bill of lading dated on that day and which is in the case. Subsequently it was ascertained that some of the goods were missing and on looking for them, all or a portion were found still remaining in the depot. The truckman then forwarded these goods to the boat and took therefor the bill of lading dated October 3, 1873, which is also in the case. There is evidence in the case tending to show the specific articles packed and forwarded from New York; but there is none to show what were delivered to the defendants at any time except such as is contained in the two bills of lading.

In this state of the case there would seem to be two distinct independent contracts in relation to the carriage of the goods, and while the writ sets out the earlier the testimony in question relates to the later.

To meet this difficulty the plaintiff, admitting that if the two lots were distinct contracts the testimony was not admissible, claims that in reality there was but one, that of September 9; "that at that time the defendants accepted and assumed the charge of all his goods, the same in quantity and quality that came from New York to Boston," that this was a question of fact for the jury and the testimony was admissible to enable them to pass upon the question of damages, if they so found the contract.

In accordance with this theory the presiding justice gave to the jury the instructions referred to in the fourth, fifth and seventh specifications in the exceptions. If these instructions were authorized the testimony objected to was properly received. It is sufficient therefore to consider the propriety of the instructions, which may be sufficiently understood from the following extracts from the charge.

After accurately and clearly stating the delivery necessary to the defendant's assumption of their duties as common carriers in these words, "their liability commences when the goods have been delivered to the common carrier—have been delivered at the usual place set apart for the receipt of such articles—to the person appointed to receive them, to the proper servant of the carriers,

if not to the carriers themselves," the presiding justice adds : "now delivery to the carrier does not necessarily mean that the goods shall be placed actually upon the boat, or within his actual control. It means actually or constructively within his actual control. In other words if he assumes the custody and control he assumes the charge of the goods."

Then after stating the theory of the different parties upon this question of delivery he proceeds, "now in reference to this first point, what goods and chattels were delivered to the defendants, to be transported to Augusta on September 9, I shall submit to you as a question of fact, from the evidence in the case, what articles under the rules I have given you in reference to the delivery, were put in charge of these defendants at that time ? Did they at that time by any thing that they did or said, or described in this receipt, intend to assume the charge, the custody, the control of anything more than was then open to inspection to them on the wharf, or was it then understood, and was their attention brought to other articles not in this receipt of nineteen packages, whether they were there on the wharf or elsewhere ? For, I instruct you, that it is competent for a common carrier to receipt for articles which are not then at the usual place, and he will be bound by his receipt. If it is understood and they have been brought to his notice, and he receipts for articles not on the wharf he will be bound by that receipt. Ordinarily, it is true, and experience has shown that justice requires that the rule must be enforced that common carriers must be bound by the amount of merchandise in their receipts."

These instructions, as they were intended, clearly gave the jury to understand that they might infer, if the evidence in their opinion justified it, that the contract relied upon not only included the goods on the defendants' wharf but others elsewhere wherever they might be. This was erroneous certainly as applied to this case. The defendants were common carriers by water. Their duties as such began and ended upon the water or upon the wharf at each end of their route. A portion of these goods, as the case shows, at the time the contract was made were in the railroad depot, or had not arrived there in their transit from New York.

If therefore they had "assumed the charge" of them it would not have been as carriers, nor would their liabilities as such have attached until their arrival at their wharf.

But there is no proof of any such assumption. The only evidence of the contract set out in the writ is that contained in the bill of lading of September 9. The duties and liabilities of the defendants must rest upon that and the law applicable to it. So far as it is a contract it is not to be extended by parol testimony, and if there were any such in the case it would not be competent for the jury to infer "by any thing the parties said or did or described in the receipt" that it covered or included any goods not specified by its terms. As a written instrument its construction is a question of law and not of fact. Parol testimony, if offered, would have been competent to show what specific articles were contained in the packages mentioned in the bill of lading but not that it embraced other packages or goods elsewhere.

By its terms it clearly included only such as at the time were actually delivered upon the wharf. In it these goods are described as "shipped" and under that description it covers, and binds the defendants for no goods except such as are on the vessel or wharf, or such as shall be so delivered as and for the goods embraced in the bill of lading and before the vessel sails. *Rowley* v. *Bigelow*, 12 Pick. 314-15 ; The Delaware, 14 Wall. 600-1.

The liabilities of these defendants if any, are as owners of the steamer and in no other way. The same contract that would bind them for the safe carriage of the goods would also bind the vessel. In the Lady Franklin, 8 Wallace, 329, Davis, J., says : "The doctrine that the obligation between the ship and cargo is mutual and reciprocal, and does not attach until the cargo is on board, or in the custody of the master, has been so often discussed and so long settled, that it would be useless labor to restate it or the principles which lie at its foundation."

In the Delaware, *supra*, on page 602, Clifford, J., says : "Bills of lading when signed by the master, duly executed in the course of business, bind the owners of the vessel if the goods were laden on board or were delivered into the custody of the master, but it is well settled law that the owners are not liable, if the party to

whom the bill of lading was given had no goods, or the goods described in the bill were never put on board or delivered into the custody of the carrier or his agent."

The result must have been the same if the goods at the depot or "elsewhere" had been brought to the attention of the clerk who signed the bill of lading and it had been the intention that such goods should be embraced in the receipt. They were not so embraced and no receipt was given for any goods other than the "nineteen packages more or less" then on the wharf. It is not a question of intention simply except so far as that intention is learned from the language used in the writing.

It may be true as stated in 2 Red. on Railways, § 156, par. 6, "that an acceptance by the carrier at an unusual place will be sufficient to charge him," but by the same authority there must be an acceptance and by some one legally authorized. Here there was not only no acceptance, at any place except on the wharf, but no one authorized to make the acceptance elsewhere.

The action is against the defendants as owners of the boat. The goods were received by one employed for that purpose. So far as appears he had no authority other than that usually attached to such a position, certainly no more than the master ordinarily has ; and that as already seen is sufficient only to bind the owners when exercised in the ordinary course of business and in relation to goods delivered on board, or into the actual possession of the master at the wharf. The Delaware, *supra*, on page 602.

Nor is there any evidence upon which the jury could find a constructive delivery. That can be, only when by the constant practice and usage of the carrier he receives property left for transportation at a particular place. 1 Chitty Con. 686 note.

If therefore the instructions were correct as abstract principles of law they were not applicable to this case for want of testimony upon which they can rest ; and in this respect the case is analagous to that of the *United States* v. *Breitling*, 20 Howard, 252, and must be governed by the doctrine there laid down on page 255, as follows: "It is clearly error in a court to charge a jury upon a supposed or conjectural state of facts, of which no evidence has been offered. The instruction presupposes that there is some

evidence before the jury which they may think sufficient to estab-lish the facts hypothetically assumed in the opinion of the court; and if there is no evidence which they have a right to consider, then the charge does not aid them in coming to correct conclu-sions, but its tendency is to embarrass and mislead them. It may induce them to indulge in conjectures, instead of weighing the testimony."

In this case we must infer that the jury were led into error, for while there is no evidence tending to show any liability on the part of the defendants for loss of or damage to any goods not on the wharf at the time the bill of lading of September 9 was given, we are unable to account for the amount of the verdict except on the ground that they were held for all the goods started from New York though for aught that appears some of them and perhaps all that were lost may never have been put into their custody.

3. The court in ruling upon the admissibility of testimony offered by defendants upon the condition of the goods when received, held that the bill of lading was conclusive evidence as to their apparent condition at that time.

A bill of lading is twofold in its character. It is a receipt as to the quantity and condition of the goods shipped, and a contract to transport and deliver the same upon the terms specified. That used in this case began in the usual form: "Shipped in apparently good order and well conditioned," and describing the property as "19 packages H. H. goods more or less," and contains at the close the clause: "contents and condition unknown." The first clause if applied to the condition of the goods would be inconsistent with the last; for condition unqualified would include the apparent as well as the real; if the first is applied to the packages, then both can stand together and each have its full and proper meaning and effect. However it may be in this, in many cases this would be a matter of importance to enable the parties, if the goods were injured when delivered at the end of the route, to ascertain the more easily whether the injury happened during the carriage or was the result of a previous defect. This was the construction given to a similar bill of lading in *Clark* v. *Barnwell*, 12 Howard, 283, holding that the acknowledgment as to condition extended

only to the cases, "excluding any implication as to the quantity or quality of the article, condition of it at the time received on board, or whether properly packed or not in the boxes."

Under this construction as the testimony offered related to the condition of the goods and not to that of the packages, it is evident that it should have been received.

But if we discard the last clause and apply the first to the condition of the goods the result must be the same. So far as a bill of lading is a receipt it has the same character as other receipts and is subject to the same principles of law. We are not aware of any more solemnity in its execution or any more importance to be attached to it than to other instruments of a like nature. It has often been decided that it may be modified, controlled or contradicted by parol testimony. Upon this point the authorities are numerous and uniform or nearly so. *O'Brien* v. *Gilchrist*, 34 Maine, 554; *Tarbox* v. *Eastern Steamboat Co.*, 50 Maine, 339. *Sears* v. *Wingate*, 3 Allen, 103. *Shepherd* v. *Naylor*, 5 Gray, 591. *Blanchard* v. *Page*, 8 id. 287. *Richards* v. *Doe*, 100 Mass. 524. *Hastings* v. *Pepper*, 11 Pick. 43. *The Maryland Ins. Co.* v. *Rider's Admr.*, 6 Cranch, 340. *Nelson* v. *Woodruff*, 1 Black. 156. *Ship Howard* v. *Wissman*, 18 Howard, 231. The *Delaware*, 14 Wallace, 601. 2 Wharton Ev. § 1070. 1 Greenl. Ev. § 305.

Some of these cases as well as others are relied upon to sustain the ruling in question, at least by implication, but a careful examination of them we think, leads to a different conclusion. Perhaps one of the strongest is that of *Hastings* v. *Pepper*, in which it is said the acknowledgment in the bill of lading that the goods were in "good order and well conditioned, is *prima facie* evidence that as to all circumstances which were open to inspection and visible, the goods were in good order ; but it does not preclude the carrier from showing, in case of loss or damage, that the loss proceeded from some cause, which existed but was not apparent, when he receives the goods." In this case there was no qualification to the acknowledgment, hence in terms it applied as well to hidden as to open defects. Still the court said it was *prima facie* as to the open and in effect that it had no bearing upon

such defects as were not visible. This is the only construction we can give the language without taking all meaning and effect from the phrase *prima facie* so unqualifiedly used. In the same opinion it is stated that this is one of the positions which "may be taken to be perfectly well established." This case is referred to and in this respect adopted in *Nelson* v. *Woodruff*. This will be found to be the result of most or all the cases where a construction is given to a bill of lading, with an admission thus unqualified, and it is unnecessary to refer to them more particularly. It would be singular indeed if a qualified admission is to have a greater effect than one without any qualification.

The reason given in some of the cases, as in *Barrett* v. *Rogers*, 7 Mass. 300, why the admission though unqualified should not apply to or be holden conclusive as to interior or invisible defects, "because such were not open to inspection" cannot avail as a reason why the admission should be held conclusive in regard to those matters which are open. The distinction between the visible and invisible defects is not to affect the construction to be put upon the language used. In either case it is but an admission and must be treated as such. It may and must affect the probative force of the acknowledgment. A receipt is open to explanation by evidence *aliunde*, not because the matters therein referred to are more or less apparent, but because it is an admission and nothing more than an admission, and its nature is the same whether written or verbal, qualified or absolute.

It is self-evident that every admission offered in evidence will depend for its force upon the circumstances under which it was made. If made without knowledge and when knowledge could not reasonably be expected, as held in some of the cases cited, it would have no effect whatever. If on the other hand it was deliberately made with knowledge or under such circumstances as to show a duty to know, the probative force would be great; and under some circumstances so great that a jury might hold a party to it, though he testified differently upon the stand; certainly unless he gave a satisfactory explanation of the change. This is undoubtedly what, and all that was meant by the remark found in a few of the cases cited, that the carrier is bound by the admis-

sion of the condition of the goods received when plainly visible. The context shows that nothing more could have been intended.

In accordance with these views the number of articles stated in the receipt, though clearly open to inspection, has always and without question been held open to explanation, and in *The Ship Howard* v. *Wissman, supra,* as in other cases, testimony as to the apparent, as well as the real condition of the cargo, was admitted without objection to overcome the *prima facie* case made by the bill of lading.

An admission in writing or otherwise, is not conclusive when not true, unless by way of estoppel, which is not applicable here. It might be, had the bill of lading been assigned to a *bona fide* purchaser of the goods. But such is not the case. This action is in favor of the shipper and the plaintiff has acquired no new rights, has in no respect changed his condition in consequence of the admissions made as to the quality of the goods.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS, LIBBEY and SYMONDS, JJ., concurred.