(86 N. W. Rep. 712.)

---

PETER AUSK *vs.* THE GREAT NORTHERN RAILWAY COMPANY.

Opinion filed, May 7, 1901.

**Carriers—Live Stock Shipment—Pleading.**

> Plaintiff commenced an action against the defendant for negligently killing his horse during shipment, alleging that it was shipped from Grand Rapids, Minn., to Moorhead, Minn. The proof showed that the contract at Grand Rapids was in writing, and with another company; there being no evidence or allegation in the pleading of any joint relation between the defendant and such company. *Held,* that plaintiff could not recover, under such an allegation in the pleading, by virtue of a delivery to or contract with or duty of defendant entered into at another place.

**Offer of Proof.**

> A certain offer of proof considered, and *held* not admissible under the complaint as framed.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Peter Ausk against the Great Northern Railway Company. Judgment for defendant, and plaintiff appeals.
Affirmed.

*M. A. Hildreth,* for appellant.

*W. E. Dodge* and *C. J. Murphy,* for respondent.

MORGAN, J. This action is brought to recover damages for the killing of a certain horse belonging to the plaintiff. The complaint (omitting allegation that defendant is a common carrier) states, in substance, that on or about the 25th day of March, 1900, the plaintiff, at Grand Rapids, Minn., delivered to the defendant, and it then and there received, as such carrier, one horse of the plaintiff's, of the value of $175, to be safely and securely conveyed by said defendant from said Grand Rapids, Minn., to the city of Moorhead, Minn., there to be safely delivered to the plaintiff, for a certain reward, which the plaintiff then and there paid to the said defendant as aforesaid; that the said defendant did not safely convey and deliver said horse as it had undertaken to do, but, on the contrary, conducted itself so carelessly and negligently in and about carrying and transporting the same that said horse was, in consequence thereof, killed, causing damage to the plaintiff in the sum of $175. The defendant interposed a general denial as an answer. The trial

court directed a verdict for the defendant at the close of plaintiff's case. Judgment of dismissal was entered, from which the plaintiff appeals, specifying many alleged errors. It will be necessary for us to consider but one of such specifications of error, viz.: "The court erred in directing a verdict in favor of the defendant and against the plaintiff for the dismissal of the action on the ground that the plaintiff had failed to make out a case."

On the trial, one John Ausk was a witness on behalf of the plaintiff, and testified that he shipped a car load of horses over the Great Northern road from Grand Rapids, Minn., to Moorhead on March 25, 1900; among such horses being the one that was killed. He testified further that such horses were thus shipped under a written contract, which was lost, and that this car load of horses was unloaded at Grand Forks, and reshipped in a Great Northern car, to be delivered at Moorhead. He testified concerning the negligent operation of the train, as he claimed, and the consequent injury to the horse. On his cross-examination, he identified the contract shown him as the one he had signed at Grand Rapids, under which his and his brother's horses had been shipped. This contract was received in evidence, under plaintiff's objection, as part of this cross-examination. The defendant's counsel thereupon moved the court to strike out all of this witness' oral testimony relating to the making of the contract of shipment, and the delivery of the horses under such oral contract, on the ground that the same was secondary and incompetent, which was granted. The written contract thus received in evidence was a contract for the shipment of a car of horses, in direct terms entered into "between the Eastern Railway Company of Minnesota, party of the first part, and John Ausk, party of the second part." Such contract is signed by "G. R. Reiss, Agent for Eastern Railway Co. of Minnesota, and by John Ausk, Shipper." At the top of the contract, in large letters, is printed, "Great Northern Railway Line," and right under these words, in smaller letters, "Eastern Railway Company of Minnesota." On the right hand margin of the contract, under the words "Issuing Agent," are stamped the words, "Great Northern Railway, Grand Rapids, Minn., March 25, 1900." On the same margin are written the words, "Car No. 8,394, G. N." On the back of such contract is a stipulation signed by John Ausk, releasing the Eastern Railway of Minnesota from all liability for injury to himself, in consideration of free passage of himself from Grand Rapids to Moorhead and return. As we construe this contract, it is not a contract with the defendant, but is one with the Eastern Railway Company of Minnesota. The fact that a car of the Great Northern was used, or that the stamp of the Great Northern Railway was made on the contract, does not seem to us of any particular significance as showing that the Great Northern was a party to the contract, or directly bound by it as a party to it. That it was a contract with the Eastern Railway Company seems too plain for argument;

and it is also apparent, from the reading of the contract, that the Eastern Railway Company is a distinct company from the Great Northern. There is nothing in the evidence, outside of the contract, nor in the complaint, tending to show any connection or relation between these two companies, nor anything to show where their lines connect, nor anything to show that the Great Northern is bound by any contract or violation of duty of the Eastern Railway Company. We think that it was perfectly proper to permit a preliminary cross-examination of the witness as to this contract. He had testified to a shipment. To ascertain whether such shipment was evidenced by written contract or not was necessary, in order to ascertain the rights of the parties, as such rights would be governed by the written contract, if one had been made. For the same reasons, such cross-examination was proper after he had been examined in chief; nor was there any error in receiving the contract in evidence; nor was it error to strike out all oral testimony as to the delivery and shipment at Grand Rapids as soon as the contract was received in evidence. This witness, who is plaintiff's brother, testified as to this contract: "Exhibit A is the contract of shipment executed by me at Grand Rapids, and delivered to me by the railroad company there." It follows, then, that this contract governed so far as any Grand Rapids shipment was concerned, and no evidence was offered as to any other contract at Grand Rapids. Such being the fact, there was no evidence in the case of any liability against the defendant, express or implied, under the Grand Rapids contract, as that was a contract with another company, and there is no allegation in the complaint in any way connecting the defendant with the Grand Rapids contract. Therefore no evidence would be relevant under this complaint, until amended, as to any other contract or duty of the defendant in respect to this shipment of horses.

After the contract, Exhibit A, had been received in evidence, plaintiff's counsel made the following offer of proof: "We offer to show by this witness [the plaintiff] that these horses were put into a car of the Great Northern line; that they were unloaded at Grand Forks for feeding purposes, reshipped in a car of the Great Northern Railway line, to be delivered at Moorhead, Minn.; that they went over the line of the Great Northern Railway; and further offers to show that through and by the negligence of the Great Northern Railway, its officers and servants, at Moorhead, this horse was thrown down and injured, and from such injuries it subsequently died." This offer was objected to as irrelevant under the pleadings, and the objection sustained. This was an endeavor to prove a new contract entirely irrelevant under the complaint as it then stood. Admitting that the horses were put into a Great Northern car at Grand Rapids under a contract with another company, still no responsibility would attach to the Great Northern by virtue of that fact alone. The unloading and reshipment at Grand Forks for feeding purposes would not be admissible as a fact to

bind the Great Northern by virtue of its acceptance of the stock there, when the complaint charges it with having received the stock at Grand Rapids. The rule is, that the proof in such cases must conform to the allegations of the complaint. Such contracts must be proven, with comparative strictness, as pleaded. An allegation of one contract in the complaint is not met by proof of a contract at another place than that laid in the complaint. The defendant was entitled to be apprised of what it would have to meet by proof at the trial. The complaint having alleged that this stock was received by the defendant, as an initial carrier, at Grand Rapids, proof that it received it at some other place as a connecting carrier was not admissible without an amendment of the complaint. "In suing the last of several connecting carriers for a loss, it is necessary to allege that the carriers were joint contractors, or that the property was delivered and received by the defendant." 3 Am. & Eng. Enc. Law (2d Ed.) p. 853; *Railroad Co.* v. *Bryant*, 67 Ga. 212. Speaking of pleading in actions of this kind, a noted author has said: "The plaintiff may rely upon a more general statement when he elects to proceed *ex delicto* than when he sues upon a contract. But still, if he enters into a particular or detailed statement of his cause of action, and there be a misdescription as to any matter which goes to the essence of the action, he must fail; as, for instance, if the allegation should be of an undertaking to carry one thing or to one place, and the proof should be of an undertaking to carry another and a different thing or to a different place." Hutch. Carr. § 750. The complaint in this case having charged a delivery and acceptance of the stock by the defendant at Grand Rapids, a delivery and acceptance at Grand Forks or some other place cannot be relied on without an amendment of the complaint. The following cases strongly tend to sustain this proposition: *Banking Co.* v. *Tucker*, 79 Ga. 128, 4 S. E. 5; *Witzler* v. *Collins*, 70 Me. 290, 35 Am. Rep. 327; *Railroad Co.* v. *Cahill*, (Colo. App.) 45 Pac. 285. "Where the proof as to the termini of the transportation varies materially from the allegations of the declaration in that regard, such variance will be fatal to a recovery." 3 Enc. Pl. & Prac. (2d Ed.) p. 847. The following cases sustain this principle of pleading in this class of cases: *Mann* v. *Birchard*, 40 Vt. 326, 94 Am. Dec. 398; 2 Greenl. Ev. § 210, and cases there cited; *Railroad Co.* v. *Sullivan*, 25 Ga. 228. The plaintiff was therefore not entitled to have the evidence offered received, as it was not responsive to his complaint.

We decide this case upon the grounds that there was a total failure of proof, so far as the cause of action pleaded is concerned, and that no other contract or duty of the defendant could be proven under the allegations of the complaint as framed. The decision on these grounds being absolutely decisive of the appeal, it is not necessary to consider other assignments of error. Judgment affirmed. All concur.